## JOSEPH JACKSON

### v.

## MILTON WARREN.

1. ERROR — *when it must be assigned.* The Supreme Court will not inquire into the propriety of a refusal of the court below, to grant a motion to quash a writ in an action of forcible detainer, when there is no assignment of error upon such refusal.

2. PRACTICE — PLEADING — *motion to quash complaint in forcible detainer.* If the complaint in an action of forcible detainer is substantially defective, a motion to quash the complaint should be allowed.

3. AMENDMENTS — *discretionary.* In civil proceedings in courts of common law, all amendments, if no statute interposes to prevent, are in the discretion of the court, and are allowed or refused, as the court may deem most conducive to the furtherance of justice, under the particular circumstances of the case before it.

4. SAME — *allowed upon terms, and herein of granting a continuance upon amendment being made.* It is usually the case that the court, on granting leave to amend, imposes terms upon the party; and if the amendment is material, and calculated to surprise the opposite party, a continuance is granted if demanded.

5. SAME — *of complaint in forcible detainer.* So, the complaint in an action of forcible detainer may be amended; and where this was allowed upon the party paying all the costs up to the time of granting the leave to amend, and for which an execution was awarded, and the cause was thereupon continued, there was held to be no error.

6. ERROR — *in the exercise of discretionary power.* In saying there was no error in granting leave to amend the complaint, the court added: "Even if error could be assigned in the exercise of a discretionary power of this nature."

7. CONSTRUCTION OF STATUTES — *general rules.* To understand an act purporting, in the title, to be amendatory of another act, it must be known what the act to be amended was — for what cases it provided — what was the defect in it, and how reached by the amendatory act — what was the mischief, and what the remedy proposed.

8. A remedial statute should receive a liberal exposition.

9. FORCIBLE ENTRY AND DETAINER, AND FORCIBLE DETAINER — *when, and against whom they will lie under acts of* 1845 *and* 1861.* By chapter 43 of the Rev. Stat. of 1845, this action could be maintained in three cases only: *First,* Where there was a wrongful or illegal entry, as contradistinguished from a forcible and violent entry. *Second,* Where the entry is forcible, by means of actual violence. *Third,*

---

* See act of 16th Feb., 1865, Sess. Acts, p. 107, amendatory of the act of 1845.

Jackson *v.* Warren.

Where a tenant wrongfully holds over, after the expiration of the time for which the premises were let to him.

The act of 1861 brings within the reach of this action, two cases in addition:

*First,* Where a vendee, under a contract to purchase, has entered into possession, and, before obtaining a deed, refuses to comply with the contract; and, *second,* where lands have been sold under a judgment or decree, "and the party to such judgment or decree, after the expiration of the time of redemption, refuses, after demand in writing by the purchaser under the same, to surrender possession thereof."

10. SAME — *under act of* 1861, *remedy not restricted to the nominal party to the decree.* When a remedy by this action is sought under the second clause of the act of 1861, it is not restricted to the nominal party against whom the decree was rendered, but may be employed against any one who, even after the expiration of the time of redemption from the sale under the decree, and after the execution and delivery of the master's deed to the purchaser, by collusion with the defendant in the decree, obtains and holds the possession of the premises without the consent of the purchaser.

11. SAME — *whether in the first class of cases, remedy confined to the vendee.* It cannot be doubted that in the first class of cases provided for in the act of 1861, if the vendee should assign his contract, or without assigning the contract should put another party in possession, he himself abandoning the possession, and refusing to comply with the contract, this summary proceeding could be maintained against the party in possession. He would stand in the shoes of the vendee, it seems, and would be the vendee for all the purposes of this remedy.

12. SAME — *purchaser pendente lite.* So of the other class, a party purchasing the subject of litigation *pendente lite,* is affected by the decree, and is, as to the subject, a party to the decree.

13. REMEDY IN CHANCERY *against pendente lite purchaser from mortgagor.* Before the act of 1861 was passed, and now, if either the mortgagor or purchasers from him, who purchased during the pendency of the suit or after the sale of the premises, refused to surrender the possession to the purchaser under the decree, the court, on motion, would have power to make an order that he should deliver the possession to the purchaser. If it be disobeyed, an injunction would issue, and on proof of service of the injunction, and continued refusal, the purchaser might proceed either by attachment, or by suing out a writ of assistance. *Pro hac vice,* the purchaser is a party to the decree.

14. LIS PENDENS — *how long a case so continues.* It cannot be said that a case is no longer *lis pendens,* after a decree and sale, and a conveyance executed, because the court of chancery is not *functus officio,* until the decree is executed by delivery of possession.

15. LANDLORD AND TENANT — *mortgagor in possession after condition broken.* It has been said that the mortgagee, after condition broken, may consider the mortgagor in possession, as his tenant for some purposes. If he elects to consider him as his tenant, it is as a tenant at sufferance, and he is not entitled to notice to quit.

Jackson *v.* Warren.

16. SAME—*purchaser from mortgagor.* So a purchaser from the mortgagor, after a decree and sale, who enters into possession, must be in the same, and can be in no better condition; he must hold in the same capacity as his vendor held, to whose rights he succeeded.

17. ERROR—*waived by a failure to object.* If a deed is given in evidence without objection, the party against whom it was introduced cannot afterwards allege against its validity.

18. PURCHASER AT MASTER'S SALE—*when entitled to a deed, and herein, whether the sale must be confirmed.* In England the practice is to keep the biddings open at a master's sale, so that any person may advance on a bid received by the master, which he reports to the court, so, until a final confirmation of the sale, no one could be considered a purchaser, but a mere bidder.

But under our practice at such sales, a valid and binding contract of sale is made when the hammer falls. In the absence of fraud, mistake or some illegal practices, the purchaser is entitled to a deed on the payment of the money. A person holding such a deed, is *prima facie* the legal owner of the land described in it.

19. MASTER'S SALES—*power of the court over them.* But the court of chancery has, in its discretion, power to set aside a master's sale, for gross inadequacy of price, even where there is no fraud. Per Mr. CHIEF JUSTICE CATON.

20. CONFLICTING DECISIONS— *Steiner* v. *Priddy,* 28 Ill. 179, was not decided in view of the act of 1861; had it been, the decision would have conformed to it, as in this case.

APPEAL from the Circuit Court of Stark county; the Hon. A. L. MERRIMAN, Judge, presiding.

The case is sufficiently stated in the opinion of the court, to a proper understanding of the question decided.

Messrs. WEAD & POWELL, for the appellant.

Messrs. G. A. CLIFFORD and GLOVER, COOK & CAMPBELL, for the appellee.

MR. JUSTICE BREESE delivered the opinion of the Court:

This was an action of forcible detainer, brought by the appellee against the appellant before a justice of the peace of Stark county, to recover the possession of a certain tract of land therein situate. A verdict and judgment having been rendered for the plaintiff, an appeal was taken to the Circuit Court, where, on a trial by jury, a verdict was given for the

plaintiff. A motion for a new trial was entered, for the reasons: 1. That the verdict was against law. 2. Was against the evidence. 3. The court gave improper instructions on behalf of plaintiff. This motion was overruled, and exceptions taken. The case is brought here by appeal.

In the Circuit Court, at the proper term, a motion was made to quash the writ, and at the same time a cross-motion was entered by the plaintiff for leave to amend the complaint, which last motion was allowed, the plaintiff to pay all costs that had accrued up to the time of the motion to amend, and the motion to quash the writ was disallowed.

The complaint, when first filed, on May 27th, 1861, was in these words:

" The complaint of Milton Warren, of the town of Beeda, in the county of Bureau, and State of Illinois, who being first duly sworn, upon his oath gives David McCance, Esq., a justice of the peace, in and for said county of Stark, to understand and be informed that, at the October Special Term, A. D. 1858, of the Stark County Circuit Court, in a certain cause then and there in said court pending, wherein Milton Warren was complainant and Heil Taylor and Mary A. Taylor were defendants, in chancery, for the foreclosure of a mortgage, a decree was made and rendered by the said Court in favor of the said complainant and against the said defendants, wherein the said defendants were required to pay to the said complainant the sum of four hundred and thirty-five dollars, the amount found to be due to the said complainant, in thirty days from the date of said decree, or in default of such payment, the premises therein mentioned and described, to wit, the south half of the south-west quarter of section number four (4) in township number thirteen (13), north of the base line of range number seven (7), east of the fourth principal meridian, situated in the county of Stark, and State of Illinois, were required to be sold to satisfy the said sum of four hundred and thirty-five dollars, interest and costs, of said cause, by the master in chancery, in and for said Stark county; that in default of the payment of said sum of money, and in pursuance of the said decree, Martin Shallenberger, Esq., then master in chancery, in and for said county of Stark,

and who was appointed a special commissioner for that purpose, did afterwards, to wit, on the thirty-first day of December, A. D. 1858, sell the said premises hereinbefore described, to this affiant, for the sum of four hundred and sixty-six dollars and ·eighty-one cents, that being the highest and best bid for the same. And that said Heil Taylor and Mary Taylor having failed to redeem the said premises from such sale to this affiant, the said Martin Shallenberger, Esq., master in chancery and special commissioner as aforesaid, did afterwards, to wit, on the fourth day of September, A. D. 1860, execute and deliver to this affiant a deed conveying to him the said premises, hereinbefore described, in fee simple absolute, and that this affiant is now lawfully entitled to the possession of the said premises under the law. But this affiant further gives to the said justice of the peace to understand and be informed, that the said Heil Taylor refused and neglected to deliver possession of said premises to said Milton Warren, but willfully and unlawfully sold, or pretended to sell, said premises to one James Jackson, and suffered and permitted said James Jackson to take possession of said premises, under said pretended sale thereof, that one Joseph Jackson now as the tenant of said James Jackson, now occupies said premises, and although the time of the redemption of said premises has long since expired, yet the said Joseph Jackson refuses to deliver up the possession of said premises to said Milton Warren, after demand in writing made by said Milton Warren upon the said Joseph Jackson, to surrender the possession thereof to him. That on the 10th day of May, 1861, at the county of Stark aforesaid, the said Milton Warren made a demand in writing for the surrender of the possession of said premises to said Milton Warren, and said Joseph Jackson, then and there refused to so deliver the possession thereof to said Warren, and still refuses so to do. Said affiant therefore prays that the said Joseph Jackson may be summoned to answer the said complaint according to law. Sworn to, &c."

As appears by the record, the following words were erased from the complaint: "Sold or pretended to sell said premises to one James Jackson, and suffered and permitted said James

Jackson to take possession of said premises under said pretended sale thereof. That one Joseph Jackson, now as the tenant of said James Jackson, now occupies said premises, and although the time of redemption of said premises has long since expired."

The space thus made vacant, was filled by inserting the following:

" After the expiration of the term of fifteen months, from the time of said sale under said decree, and after the execution and delivery of a deed by said commissioner and master in chancery to said Milton Warren, on or about the 1st day of November, A. D. 1860, by collusion with one Joseph Jackson and one James Jackson, and for the purpose of preventing the said Milton Warren from obtaining possession of said premises, fraudulently suffered and permitted the said Joseph Jackson to obtain possession of said premises, without the knowledge and consent of said Milton Warren; and said Joseph Jackson since then has collusively held possession of said premises."

The amended complaint was sworn to and filed November 7, 1861, whereupon the defendant entered his motion to quash the complaint and dismiss the suit. This motion after argument was denied and exceptions taken. The record does not show the grounds on which this motion was based.

The errors assigned on the record are, besides the general error, the following:

2. The court erred in overruling defendant's motion to quash the complaint and dismiss the suit, and in allowing the plaintiff to amend the complaint. 3. In overruling the defendant's motion to quash the complaint as amended. 4. In giving the instructions on behalf of the plaintiff. 5. In overruling the motion for a new trial. 6. In admitting in evidence the deed to plaintiff.

As to the second error assigned, the record does not show any such motion. To the original complaint the only motion was to quash the writ, which was met and opposed by the counter motion of the plaintiff to amend the complaint. No error being assigned on the refusal to quash the writ, we

cannot notice it, and besides, no reason is given why the writ should have been quashed.

On refusing to quash the writ, the court allowed the plaintiff's motion to amend the complaint on payment of all costs up to that time, and awarded execution for them. The record no where shows that any motion was made to dismiss the original complaint, or any objection to the order granting plaintiff leave to amend on payment of all the costs.

When the amended complaint was filed, then a motion was made by the defendant, to " quash " the amended complaint, and to dismiss the suit, and this is the first and only motion striking at the complaint itself, or questioning the validity of the proceeding. The second error, therefore, is not assigned upon any fact or ruling appearing in the record.

The third error assigned brings up the decision of the court in overruling defendant's motion to quash the amended complaint, and its consideration involves the merits of the case. If the amended complaint is substantially defective, the motion should have been allowed.

No argument is submitted, on this branch of the case, by the appellant, nor is any reason given why the court should not have granted leave to amend. We, therefore, will dismiss it, with the remark that, in civil proceedings in courts of common laws, all amendments, if no statute interposes to prevent, are in the discretion of the court, and are allowed or refused, as the court may deem most conducive to the furtherance of justice, under the particular circumstances of the case before it. *State Bank* v. *Backmaster*, Breese (new ed.) 176, and notes; *Miller* v. *Mitzger*, 16 Ill. 390; *Brown et al.* v. *Smith et al.*, 24 id. 196. It is usually the case, that the court, on granting leave to amend, imposes terms on the party, and if the amendment is material and calculated to surprise the defendant, a continuance is granted if demanded. In this case the plaintiff was allowed to amend, on payment of all costs up to the time of allowing the motion, and for which an execution was awarded and the cause was continued. We are at a loss to perceive any

error in this action of the court, even if error could be assigned in the exercise of a discretionary power of this nature.

The next question submitted is, as to the sufficiency of the complaint as amended. The appellant's counsel, in arguing this point, seem to be under the impression that the charge in the original complaint still remains, notwithstanding the amendment, when the record distinctly states that portion of the complaint from the word "unlawfully" to the word "yet" was erased, and the words, commencing with the word "often," and ending with the word "premises," been inserted in lieu thereof. Were this not so the complaint would be obnoxious to the objections now urged by appellant under his third point. But the fact is not as he supposes. The charge in the complaint was changed, from a sale by Taylor to James Jackson, to a charge of a collusive arrangement between the defendant in the decree, and the Jacksons, by which the plaintiff was kept out of the possession of the premises he had purchased under the master's sale. The amended complaint is liable to none of these objections, there is no inconsistency, uncertainty or contradiction in it, but it alleges in distinct terms, that by collusion on the part of the appellant with the defendant in the decree, and James Jackson, the appellee, was prevented from obtaining possession of the premises, and that the defendant in the decree, fraudulently suffered and permitted the appellant to obtain possession of the premises without the knowledge and consent of the appellee, and that Joseph Jackson, the appellant, since then, has collusively held possession of the premises. This charge is plain and distinct, and the question is, does it present a case contemplated by the act of February 20, 1861. The appellant insists it does not, that the act referred to, only authorizes such a suit to be brought against the party to the judgment, and against no other party, that the act must be construed strictly, and as the legislature has not embraced in the act any party but the party to the judgment or decree, it must be construed to mean the party expressly named in the decree, and none other.

That portion of the act applicable to this case is, as follows:

" That chapter 43 of the Revised Statutes of 1845 shall be extended to all cases between vendor and vendee, where the latter has obtained the possession of land under a contract by parol or in writing, and before obtaining a deed of conveyance of the same, fails or refuses to comply with such contract to purchase; and to all cases where lands have been sold under a judgment or decree of court in this State, and the party to such judgment or decree, after the expiration of the time of redemption, refuses, after demand in writing by the purchaser under the same, to surrender possession thereof."

The title of the act is, " An act to amend the statute in relation to forcible entry and detainer, and landlord and tenant." Sess. Laws, page 176.

To understand an act purporting in the title to be amendatory of another act, we must know what the act to be amended was — for what cases it provided — what was the defect in it, and how reached by the amendatory act — what was the mischief and what the remedy proposed.

By chapter 43 of the Revised Statutes of 1845, this action could be maintained in three cases only: First, where there was a wrongful or illegal entry, as contradistinguished from a forcible and violent entry. Second, where the entry is forcible by means of actual violence. Third, where a tenant wrongfully holds over after the expiration of the time for which the premises have been let to him. Scates' Comp. 520; *Whittaker* v. *Gautier*, 3 Gilm. 448.

The act of 1861 brings within the reach of this action, two cases in addition; first, where a vendee, under a contract to purchase, has entered into possession, and before obtaining a deed, refuses to comply with the contract; and second, where lands have been sold under a judgment or decree, and the party to such decree, after the time of redemption, refuses, after demand in writing by the purchaser, to surrender possession.

Neither of these cases was, in terms, provided for by the act of 1845. The act of 1861 brings them within the reach of this summary proceeding; it is a remedial statute, and must have a liberal exposition. Can it be doubted, in the first class

of cases, if the vendee had assigned his contract, or, without assigning the contract, had put another party in possession, he himself abandoning the possession and refusing to comply with the contract, that this summary proceeding could be maintained against the party in possession? Is he not within the spirit if not within the letter of the act? He stands in the shoes of the vendee, and is the vendee for all the purposes of this remedy.

So of the other class, is not a party purchasing the subject of litigation *pendente lite*, affected by the decree, and is he not, as to the subject, a party to the decree? This will not be denied. A *pendente lite* purchaser from a mortgagor, is, to all intents and purposes, a party to the decree, for the same proceedings may be had against him, that can be had against the mortgagor. Before the act of 1861 was passed, and at the time of its passage, and now, if either the mortgagor or purchaser from him, who purchased during the pendency of the suit or after the sale of the premises, refused to surrender the possession to the purchaser, under the decree, the court, on motion, would have power to make an order that he shall deliver up the possession to the purchasers. If it be disobeyed, an injunction would issue, and on proof of service of the injunction, and continued refusal, the purchaser might proceed, either by attachment, or by issuing a writ of assistance. 4 Kent's Com. 184; 1 Lomax' Digest, 535, title "Mortgage." *Pro hac vice*, the purchaser is a party to the decree. In one sense, the whole public is a party to a decree, for that, itself, is of a public nature and of record, of which all persons are bound to take notice. He, then, who meddles with the property, which is the subject of the decree, becomes, by that act, a party to the decree. It cannot be objected that the case is no longer *lis pendens*, after a decree and sale and a conveyance executed, because the court of chancery is not *functus officio*, until the decree is executed by delivery of possession. 1 Lomax' Dig. 534.

But there is another view in which the case may be regarded. We have said in the case of *Carroll* v. *Balance*, 26 Ill. 9, that the mortgagee after condition broken may consider the mort-

gagor in possession, as his tenant for some purposes. If he elects to consider him as his tenant, it is as a tenant at sufferance, and he is not entitled to notice to quit. A purchaser from the mortgagor, after a decree and sale, who enters into possession must be in the same, and can be in no better condition; he must hold in the same capacity as his vendor held, to whose rights he succeeded.

The act of 1861 does not say the proceeding shall be against the party named in the decree, but against the party to the decree, whether named or not. A person not named in a decree may still be bound by the decree, and to that extent may be said to be a party to the decree. We have endeavored to show that the appellant was such a party within the meaning of the act. That act is remedial in its provisions, and must have a liberal interpretation, in order that the remedy provided by it may be advanced, not crippled. If the limited construction contended for by appellant be the proper one, then a large class of cases of frequent occurrence, which it was the design of the act to reach, is not reached. The mischief complained of, not met by the act of 1845, was where a purchaser, under a mortgage sale, was prevented from taking possession, by collusion of the defendant in the decree with another party. A summary remedy in all such cases was designed to be given by the act of 1861. There could be no other object operating upon the mind of the legislature, and it is not a forced interpretation of the act, considering the object in view, to consider all persons affected by the decree of foreclosure and sale, whether named in the decree or not, as parties to the decree.

If the nominal party to this decree could not insist that his case was not within the terms and spirit of this act, so neither should it be allowed to a party who comes into possession by collusion with him. There would be no justice in that.

It is also objected that the purchaser must have a valid deed before he can demand possession. It is stipulated in this case that all the proceedings were regular up to the foreclosure and sale, and when the master's deed was offered in evidence, the

appellant made no objection to it. Having once recognized it as a valid deed, he cannot now say it is not valid. The counsel for the appellant seem to entertain the opinion that the appellee had no title by his purchase and master's deed, as the sale was not reported to the court and approved. He has admitted the sale was valid, and the master's deed passed the title to the purchaser when it was delivered. *Falbe* v. *Van Geeson*, 4 Hill, 171; *Fort* v. *Burch*, 6 Barb. 60.

In England the practice is to keep the biddings open at a master's sale, so that any person may advance on a bid received by the master, which he reports to the court, so until a final confirmation of the sale, no one can be considered a purchaser, but a mere bidder; but under our practice at such sales, a valid and binding contract of sale is made when the hammer falls. In the absence of fraud, mistake or some illegal practices, the purchaser is entitled to a deed on the payment of the money. A person holding such a deed is *prima facie* the legal owner of the land described in it. At any rate, he holds evidence sufficient to adjudge him a purchaser, within the meaning of the act of 1861. This is all that was necessary.

As to the refusal to grant a new trial, that must depend on the testimony on which the jury found the verdict. We have examined the testimony with care, and we think it fully sustains the issue presented to them. That issue was, did the appellant hold possession of these premises under the defendant in the decree, and by collusion with him, to prevent thereby appellee from getting possession of the land in virtue of his purchase under the decree and the master's deed?

It was stipulated by the parties, and was before the jury, that all the proceedings in chancery, and the sale, were valid, and that appellee was the purchaser of the premises at such sale, and that a deed was made to him. It was proved that after the time of redemption had expired, and after the making and delivery of the master's deed, appellant succeeded to the possession of the defendant in the decree, and that all the possession, or right of possession appellant had, was that of the

defendant in the decree. It was proved that the defendant in the decree had, after the foreclosure, and about one year after the decree was entered, left the premises, one Ayres, a relative of his, being on the premises at the time. That after the 4th of September, 1860, but in that month, the appellant went into possession, Ayres remaining a short time with him, when he left ; it was proved that appellant said he did not own the land, but was holding possession for his father, James Jackson, who had bought Taylor's right, and if he succeeded in holding the land, his father was to give Taylor one hundred dollars, otherwise to give him nothing. One witness said that appellant also claimed to hold under the lease from Phelps, of Peoria. It was also proved that Taylor, Jackson and Ayres were all related by affinity. These were the facts, substantially, on which the jury found collusion, and we think they were sufficient for that purpose. They are strongly persuasive, that the great object of these parties was, to prevent appellee from obtaining the possession of this land, and is strengthened by the remark of appellant, that Warren had cheated Taylor, and that they would keep possession until Taylor's improvements were paid for. Whether or not the lease from Phelps was not a part of the scheme to keep appellee out of possession was a question for the jury. The facts altogether, develop motives and design, and the jury did not err in deciding that they all pointed to, and established the collusion charged.

The remaining point is as to the instructions. These are disposed of, by the views we have already expressed, and do not require further discussion. They are all proper, and are based on the evidence given to the jury.

Some of the views here expressed may seem to be in conflict with the opinion delivered in the case of *Steiner* v. *Priddy*, 28 Ill. 179. That case was decided without reference to the statute of 1861, the attention of the court not having been called to it by the counsel on either side. Had it been, the decision would have conformed to it.

The judgment of the court below is affirmed.

Mr. CHIEF JUSTICE CATON: I concur in this judgment, but think the Court of Chancery has, in its discretion, power to set aside a master's sale, for gross inadequacy of price, even where there is no fraud. I fear the language of the opinion may be construed to deny this power.

*Judgment affirmed.*