# WILLIAM HADLEY

*v.*

# JAMES L. D. MORRISON.

1. JURISDICTION IN CHANCERY—*when extended to matters usually only cognizable at law.* In a suit in chancery brought to set aside a conveyance alleged to have been made in fraud of the rights of the complainant, if the bill be properly framed, an account may be taken of the rents and profits of the land which accrued under the occupancy of the grantee, or those claiming under him, and a decree rendered therefor, and thus adjust all the rights of the parties in that suit, arising out of the subject-matter of the litigation.

2. But if the bill in such case should not be so framed as to admit of an account being taken of the rents and profits, the complainant would be estopped from afterward invoking the aid of a court of chancery for that purpose, as that court has no original jurisdiction to state an account for rents and profits accruing under such circumstances.

3. USE AND OCCUPATION—*action therefor prior to the act of* 1861. Prior to the passage of the act of February 20, 1861, an action for use and occupation could not be maintained unless the relation of landlord and tenant existed during the occupancy.

4. SAME—*since the act of* 1861. But the act of 1861 extended the remedy to all cases where a purchase had been made and possession given, and the purchaser failed to complete the purchase, and to cases where land was sold under execution or a decree of court, and the defendant failed to surrender possession after the time for redemption had expired. In such cases the remedy is given by the act, by action of debt or assumpsit.

5. SAME—*construction of the act of* 1861. It has been held that this was a remedial statute, and as such must be construed liberally, that the remedy may be advanced and not narrowed or crippled in its provisions. So the remedy should not be confined to the cases specified in the act, but other cases falling within the mischief of the old law, and fully within the reason of the amendatory act, should be governed by its spirit, as though enumerated by it.

6. It was not the design of the legislature, however, to confer rights by that act, but only to enable parties, in the mode provided, to recover existing rights.

7. So, where a party obtained a decree in chancery, prior to the passage of the act, setting aside a conveyance of land as having been made in fraud of the rights of the creditors of the grantor, but had failed to so frame his bill as to obtain an account of the rents and profits which had accrued subsequent to the conveyance, and having no remedy at law, or right of recovery for the rents and profits, except in that proceeding, and as an incident to the principal matter which gave the court of chancery jurisdiction, the subsequent passage of the act could not, and did not, give such right of recovery. To give the act such a construction, would be to give not simply a new remedy for the recovery of an existing right, but it would be conferring a new right, and also a remedy for its recovery, which it is not competent for the legislature to do.

8. But had the decree mentioned been rendered after the passage of the law in question, then the party could have had his choice of remedies, for the recovery of the rents and profits, either to have had his bill so framed as to have them embraced in the decree in that suit, or to recover them by action at law under the act.

APPEAL from the Circuit Court of Clinton county; the Hon. SILAS L. BRYAN, Judge, presiding.

In 1841, James Duncan conveyed certain lands in Madison county to Isaac A. Letcher; and, in 1845, Letcher conveyed the same land to John Duncan, who occupied the premises until his death, which occurred on the 30th of January, 1848. Letters of administration were granted on John Duncan's estate to William Hadley. Afterward, one of the heirs of John Duncan conveyed her interest to Jonathan Duncan, and he conveyed to Charles Shenkle.

In the mean time, in April, 1842, Edward Norton recovered a judgment against James Duncan and one Ayers for $2,000 and costs in the St. Clair Circuit Court. Execution issued on said judgment against James Duncan, and a balance thereof left unsatisfied. After James Duncan died, an execution was issued on the same judgment, and levied on said lands, which were sold in pursuance of such levy on the 23d of September, 1850. James L. D. Morrison became the purchaser, and on the 11th of May, 1852, he obtained a sheriff's deed.

In 1853, Morrison exhibited his bill in chancery in the Madison Circuit Court, for the purpose of setting aside the deed from James Duncan to Letcher, and also the subsequent con-

veyances, alleging that they were made in fraud of the rights of the creditors of James Duncan. In October, 1860, Morrison obtained a decree setting aside those deeds as fraudulent and void. On the 9th day of June, 1862, Morrison commenced an action of assumpsit against Hadley to recover for money alleged to have been received by him for rents and profits of the land, and for money received for timber sold therefrom.

It appears that Hadley had leased the land in question to different tenants for nine or ten years before the commencement of this suit, and that, for a portion of that time, the rents amounted to $250 a year. At some times Hadley claimed the land, and at others he claimed that he was the agent of Duncan's heirs, or of Shenkle. He sold some timber from the land, and gave to different persons permission to use the fallen timber thereon. It does not appear that Hadley ever recognized Morrison's title.

Morrison recovered a judgment against Hadley in this action, for $1,262, from which Hadley took this appeal.

The principal question presented is, whether Morrison was entitled to his action at law against Hadley under these circumstances.

Mr. W. H. UNDERWOOD and Mr. H. W. BILLINGS, for the appellant.

1. The count for use and occupation cannot be supported without proof of a contract, and the relation of landlord and tenant. *Dudding* v. *Hill*, 15 Ill. 61; *McNair* v. *Schwartz*, 16 id. 24; *Greenup* v. *Vernon*, 16 id. 26; *Eastman* v. *Howard*, 30 Maine, 58.

2. There was no privity between plaintiff and defendant. *Trumbull* v. *Campbell*, 3 Gilm. 502; *Bloomer* v. *Denman*, 12 Ill. 240; *Hall* v. *Carpen*, 27 id. 386; *Carpen* v. *Hall*, 29 id. 512.

3. The count for money had and received will not be sustained where there is no contract express or implied, nor where it is received for rent under an adverse title. 1 Chitty's Pl. 352, ed. 1859; Chitty on Con. 478, 528; 3 Phil. Ev. 423;

*Marshall* v. *Hopkins*, 15 East. 313, 314; *Baker* v. *Howell*, 6 Serg. & R. 481; *Irvine* v. *Hanlon*, 10 id. 219; *Tobie* v. *Smith*, 28 Maine, 106; *Hardy* v. *Williams*, 9 Ired. 177; *Cincinnati* v. *Walls*, 1 Ohio, 222; *Codman et al.* v. *Jenkins*, 14 Mass. 93; *Arms* v. *Ashley*, 4 Pick. 70; *Binny* v. *Chapman*, 5 id. 124; *Haven* v. *Foster*, 9 id. 111; *Bigelow* v. *Jones*, 10 id. 161; *Brigham et al.* v. *Winchester*, 6 Metc. 460; 2 Greenl. Ev. § 120; *Wiggin* v. *Wiggin*, 6 N. H. 299; *Rathburn* v. *Stocking*, 2 Barb. 145; *Simmerman* v. *Eschberk*, 15 Penn. 417; *Richey* v. *Hindes*, 6 Ohio, 151; *Butler* v. *Cowles*, 4 Ohio, 151; *Howe* v. *Russell*, 41 Maine, 447; *Sampson* v. *Schroffer*, 3 Cal. 196; *Williams* v. *Hollis*, 19 Geo. 313.

Messrs. STUART, EDWARDS & BROWN, for the appellee.

The legal propositions involved in this case are the following:

1. The title which the purchaser of land at a sale under execution acquires to the land, and the rents, issues and profits thereof.

2. The relation which the judgment debtor in possession, and those claiming under him, in possession, sustain to such purchases.

3. The remedy of such purchaser, by which he can recover the rents, or for use and occupation, or for money had and received by another, for such rents or for timber sold from the premises.

The two first necessarily run into each other, and will be treated together, as likewise the question whether there was or could be in this case, on the part of plaintiff in error, such adverse possession as to defeat this action.

Morrison, by his title under the sheriff's deed, acquired the absolute title to the land, and the rents and profits thereof; the judgment debtor, and any remaining in possession under him, are *quasi* tenants at sufferance, and their holding is not adverse to him. *Hardy & Bro.* v. *Simpson*, Busbee's (N. C.) Law, 326; *Martin* v. *Martin*, 7 Md. 375; *Bank of Pennsylvania* v. *Wise*, 3 Watts. 396.

These two last cases decide that the purchaser at sheriff's sale is entitled to the rents as assignee at law of the reversion,

discussing this question fully. " In some instances the assignee, by operation of law, is placed in a more favorable situation than an assignee by act of the party was at common law, as the creditor who has taken in execution a rent charge and extended it upon a writ of *elegit* is entitled to demand and receive the rent afterward as it becomes payable, without *attornment* of the tenant, because the law having transferred by its operation the estate to him, it will give the means of enjoying it. 2 Bac. Ab. 712, 713, tit. Execution ; Moore, 32 pl. 104, Id. ; *Bonell* v. *Dewart*, 37 Penn. St. (1 Wright), 137.

The possession of a defendant after a sale under execution is not deemed adverse ; for he becomes *quasi* a tenant at will to the purchaser. *Jackson ex dem. Kanes* v. *Sternbergh*, 1 Johns. 153 ; *Russell* v. *Doty, Sheriff, etc.*, 4 Cow. 576 ; *Langdon* v. *Potter*, 3 Mass. 128; *Den* v. *Winans*, 2 Green, 1 ; *Waring* v. *Jackson, ex dem. Eden*, 1 Peter's S. C. 570 ; *Bank of Mobile* v. *Fry*, 23 Ala. 773. The action of assumpsit for money had and received will lie in this case.

"As a general rule, when money has been received by a defendant under any state of facts which would, in a court of equity, entitle the plaintiff to a decree for the money where that is the specific relief sought, the same state of facts entitles him to recover the money in an action for money had and received." *Moore* v. *Mandlebaum*, 8 Mich. 433.

" The action for money had and received is an equitable one, and in general may be maintained, whenever the evidence shows that the defendant has received or obtained the possession of money belonging to the plaintiff, which he ought in equity and good conscience refund to him." *Lockwood* v. *Kelsea*, 41 N. H. 185.

The application of either the above well settled rules to the facts of this case, decide it in favor of the defendant in error.

It is urged there is no privity.

" The privity required to exist between parties to a proceeding in equity, is such only as gives the complainant a title to sue the defendant. *Busby* v. *Littlefield*, 11 Foster (N. H.) 193.

Likewise this should be all that is requisite in this form of action. The right does not depend upon a privity of contract, it may grow out of a tort which may be waived. *Harpending* v. *Shoemaker*, 37 Barb. 291; 3 Phillipps' Evidence, 417, n. 1019, p. 422, n. 1019.

" It is truly said that the title to land cannot be tried in an action for money had and received; but this is to be understood of cases where the present right to land is in question and not to cases where the question applies to past gone rents." *Moneypenny* v. *Bristow*, 6 English C. R. 419.

"After the death of a bankrupt who had been tenant for life of certain property, his assignee recovered in an action for money had and received the past gone rents of his life estate from one who had received them under color of a fraudulent mortgage." *Pearce* v. *Day*, quoted in the above case *Price* v. *Pickets*, 21 Ala. 750; *Branch Bank* v. *Fry*, 23 Ala. 770; *Strayton* v. *Morris*, 4 Harr. 224.

That a bill in chancery would lie for an account for money received, as in this case, is settled by *Moneypenny* v. *Bristow*, 6 Eng. C. R. 419; Taylor's Landlord and Tenant, § 658; *Bishop of Winchester* v. *Knight*, 1 P. Wms. 407; 1 Mad. 116.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, and the declaration contained a count for use and occupation of lands, and the usual money counts. A trial was had on the general issue, and resulted in a judgment in favor of plaintiff below for the sum of $1,262, and costs of suit. A motion for a new trial was entered and was overruled by the court. Exceptions were taken, and defendant below brings the cause to this court by appeal, and assigns for error the overruling of the motion for a new trial and the rendition of the judgment in favor of plaintiff below.

It appears from the evidence that the appellee, in the year 1853, filed a bill in equity against appellant, as administrator

of John Duncan, and the heirs of Duncan and other persons, for the purpose of setting aside deeds of conveyance for the lands, for the use of which it is claimed the rents accrued, made by one James Duncan to one Letcher, and by him conveyed to John Duncan, to defraud the creditors of James Duncan. The bill charges that John Duncan occupied the premises after he received a conveyance from Letcher until the time of his death. That letters of administration were granted on his estate to appellant, who claimed to have some interest in the lands. That execution was issued against James Duncan, in his life-time, on a judgment rendered against James Duncan and one Ayres, and in favor of Norton, which was transferred to appellee by assignment, and that a part of the judgment remained unsatisfied. That after his death execution was regularly issued and the lands sold by the sheriff to appellee, who afterward received a deed from the sheriff. Appellant filed an answer to the bill, a hearing was had, and a decree was rendered setting aside the deeds from James Duncan to Letcher, and from the latter to John Duncan, as fraudulent and void as to appellee.

It also appears that appellant leased the farm to different tenants for nine or ten years before this suit was brought, that the premises rented a portion of that time for $250 a year. At some times appellant claimed the land, and at others he claimed that he was the agent of Duncan's heirs, or of Shenkle. That he sold some timber from the farm, and gave permission to different persons to use fallen timber from the farm. There is no evidence in the record, that appellant ever leased the premises of appellee, or in any manner recognized his title to the land. On the contrary, appellant claimed in his own right, or the right of others, for whom he claimed to act.

It has been repeatedly held by this court that an action for use and occupation cannot be maintained, unless the relation of landlord and tenant is shown to have existed during the occupancy. That relation may, however, be shown by express contract, or it may be implied from circumstances. *Dudding* v. *Hill*, 15 Ill. 61; *Ballentine* v. *McDowell*, 2 Scam. 28; *McNair*

v. *Schwartz*, 16 Ill. 24; *Greenup* v. *Vernon*, 16 id. 26. In the last two of these cases it was held, that when a person enters into possession under a contract to purchase, and refuses to perform the contract, the owner cannot recover in assumpsit for use and occupation. In the last named case it was also held that where a vendor remains in possession, after sale and conveyance, a tenancy cannot be implied, so as to authorize the vendee to recover for use and occupation. It then follows that as the relation of landlord and tenant was not shown, appellee could not recover under this count, at the common law.

There having been shown no tenancy, and the relation of landlord and tenant not existing, if a right of recovery exists it must be alone by force of a statutory provision, as rents could not be recovered at the common law where the occupancy was tortious. The right being for a recovery of damages merely, an action of tort was the only remedy, and neither debt nor assumpsit would lie to recover such damages.

The general assembly, for the purpose of obviating the hardships frequently suffered by the common law rule, and the act of 1845, on the 20th of February, 1861, Session Laws, 176, adopted an act to extend the remedy given by the former act to all cases where a purchase had been made and possession given, and the purchaser failed to complete the purchase, and in cases where the land was sold under execution or decree of court, and the defendant failed to surrender possession after the time for redemption had expired. It declares that in such cases the action of debt or assumpsit, for use and occupation, may be sustained.

In the case of *Jackson* v. *Warner*, 32 Ill. 331, this court held, that this was a remedial statute, and as such must be construed liberally, that the remedy may be advanced and not narrowed or crippled in its provisions. We there said, that, to understand the scope of a statute purporting in its title to amend another, we must know what the provisions of the act amended were; for what cases it provided; what defects had been observed in its operation; and we must understand how they were designed to be remedied by the amendatory act. In .

other words, what was the mischief, and what was the remedy proposed? By the act of 1845, the action of debt or assumpsit for use and occupation could only be maintained where the relation of landlord and tenant was expressly shown, or facts were proved from which that relation could be inferred. In the administration of justice, it was found that in many cases great hardships occurred where the entry was not tortious but lawful, and the person thus acquiring possession, when it was unjust and inequitable for him to retain the possession without paying rent to the owner, was held not liable, and it was obviously to remedy this evil that this amendatory act was adopted.

Under the former act, a person entering under a contract of purchase, and failing to complete it, although he may have entered according to the agreement of the parties, was not in as a tenant, nor could that relation be implied. He was in as a purchaser. So of a debtor, where land was sold under an execution or decree of a court, retaining possession after the time for redemption had expired. He was not, in any sense of the term, a tenant, nor had he entered as a wrong-doer, but it was nevertheless unjust and inequitable that he should use and occupy the premises after they had ceased to be his lands, without making compensation to the owner. These cases are enumerated in the amendatory act, and no question can of course arise as to them; but are other cases, falling within the mischief of the old law, and fully within the reason of the amendatory act, to be governed by its spirit, as though enumerated by it? We think they should.

When the Circuit Court acquired jurisdiction of the suit in equity, the complainant should have prayed an account for rents and profits, but failing to do so, he was estopped from subsequently filing a bill for that purpose. Equity had no original jurisdiction to state an account of rents or profits in this case, but, having acquired jurisdiction to set aside the conveyance for fraud, had the bill been properly framed, the account might have been stated and complete justice been done. It then follows that, when this statute was enacted, plaintiff below

had no right of recovery either at law or in equity. And, to hold that under this statute he might recover, would be to confer upon him a right which he did not previously possess. Such an act is unauthorized by the Constitution; and had this statute so provided, in terms, it would have been inoperative; but it does not, nor will we give it such a construction.

The legislature did not design to confer rights, but only to enable parties, in the mode provided, to recover existing rights. Had plaintiff below not been precluded from recovering in equity, by omitting to pray an account in his bill, it might have been otherwise. The statement of such an account not being equitable, had the decree in that case been rendered after the passage of that law, the party would have had his choice of remedies, by an action at law to recover rent after the conveyance was set aside, or to have had the account taken under the bill. But the decree having been rendered before the passage of the law, and the party then having no action at law or right of recovery, the statute could confer no such right. To hold that a recovery could be had in this case, under the statute, would be to hold, not that a new remedy was given for the recovery of an existing right, but to hold that a new right was conferred, and also a remedy for its recovery. This was not designed, nor could it have been done.

The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*