Personal Home Mortgage Company, Appellee, v. G. E.
Seegrin, Appellant.

Gen. No. 37,115.

420

Opinion filed June 15, 1934.  Rehearing denied June 28, 1934.

JOSEPH FISHER, for appellant.

REGINALD C. DARLEY, for appellee; OSCAR G. WAHL-GREN and J. CLYDE STEWART, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

Seegrin, defendant in a suit in forcible entry and detainer, appeals from a judgment entered in favor of plaintiff upon the finding of the court.  The premises in controversy are known as No. 2540 Morse avenue in Chicago and are improved by an eight-room brick bungalow.  No affidavit of merits was required or filed in the case.  There is practically no dispute as to the facts.

September 30, 1930, Frank H. Thie and Louise L. Thie, then the owners in fee simple, conveyed the premises to the Central Trust Company of Illinois, as trustee, to secure their indebtedness in the sum of $2,500, as evidenced by their promissory note, payable to bearer, in instalments.  The premises were registered under the Torrens law and the trust deed was filed in the office of the Registrar of Titles in Cook county October 2, 1930.  On the date that this note and trust deed were executed and delivered, Frank H. Thie and Louise L. Thie executed and delivered to plaintiff, Personal Home Mortgage Company, a writing described as an assignment, which recited the execution

of the trust deed by the Thies and stated that the Personal Home Mortgage Company was the owner of it and the note secured thereby and that in order to further secure the indebtedness and as a part of the consideration of the transaction they ''hereby sell, assign, transfer, *let, demise and set over* unto said Personal Home Mortgage Company the possession of all the rents, issues and profits now due and which may hereafter become due under or by virtue of any lease, whether written or verbal, or any letting of, of any agreement for the use or occupancy of any part of the premises hereinbefore described, which may have heretofore or may hereafter be made or agreed to, or which may be made by the assignee herein under the power herein granted, it being the intention to hereby establish an absolute transfer and assignment of all such leases and agreements and all the avails thereunder unto the assignee herein.'' The agreement further provided that plaintiff was irrevocably appointed the agent of the Thies for the management of the property; that it might let and re-let said premises according to its own discretion; that it might bring or defend any suits in connection with the premises in its own name or in the name of the Thies; that it might make such repairs to the premises as it considered expedient, and that it might do anything in and about the premises which the grantor Thies might do, thereby ratifying and confirming everything that the attorney should do. The writing further provided:

''Said assignee and attorney-in-fact shall apply the proceeds of said building first in payment of the taxes and operating expenses and then on account of the principal and interest of indebtedness as they consider expedient.

''In the event of the exercise of this assignment the said Frank H. Thie and Louise L. Thie, his wife, agree to pay rent for the apartment or apartments occu-

pied by them at the rate of Twelve Dollars per month for each room, and a failure on their part to promptly pay said rent on the First day of each and every month shall in and of itself constitute a forcible entry and detainer, and said assignee may in their own name, and without any notice or demand, maintain an action of forcible entry and detainer and obtain possession of said apartment or apartments.

"This assignment and power of attorney shall only be operative in the event of a default' in the payment of the principal or interest secured by said Trust Deed, or in the event of a breach of any of the covenants in said Trust Deed contained.

"And this assignment and power of attorney shall continue in full force and effect until the indebtedness secured by said deed, including interest and advances, have been duly paid at which time this assignment and power of attorney shall terminate.

"This agreement shall be binding upon and inure to the benefit of the heirs, executors and assigns of the parties hereto, and shall be construed as a covenant running with the land." The instrument was on September 30, 1930, acknowledged by the grantors to be their free and voluntary act for the uses and purposes therein set forth, and it was filed in the office of the Registrar of Titles October 2, 1930.

The certificate of title of the Registrar of Titles of Cook county in evidence shows that on October 21, 1932, Hanna Karlquist, a spinster, became the owner of this land in fee simple, subject to incumbrances, easements and estates appearing as memorials thereon, including the trust deed, the written assignments of rents, issues and profits, power of attorney, etc., heretofore described, and that on March 21, 1933, Hanna Karlquist executed and delivered a deed under seal, by which she conveyed and warranted the said premises to Ellen Rose Seegrin for a consideration of

$200. This deed was acknowledged but not recorded or filed in the office of the Registrar of Titles. The stipulation shows that Ellen Rose Seegrin resides upon the premises in controversy, and that defendant, G. E. Seegrin, her husband, resides there with her. The evidence indicates that default was made in the payment of instalments falling due upon the note after January 5, 1933, and that on March 25, 1933, plaintiff mailed to defendant Seegrin a notice stating in substance that he was advised that all further rent for the property occupied by him at 2540 Morse avenue, in accordance with this assignment of rent should be paid at the office of plaintiff on April 1, 1933. This notice was received by defendant Seegrin March 27, 1933. Defendant and his wife were then and up to the time of the trial in possession of the premises.

April 4, 1933, plaintiff caused a landlord's five-day notice to be served on defendant. The notice stated that $50 rent was due for the premises; that payment was demanded, and that unless payment was made before the expiration of five days after service of the notice, the lease of the premises would be terminated. It was stipulated that this notice was served on defendant more than five days before the institution of this suit, which was begun April 12, 1933.

It is argued by defendant in the first place that by the terms of the assignment it was to become operative only in the event of the existence of a default in payment of the indebtedness evidenced by the note, and that plaintiff has failed to prove that any default existed.

This contention cannot be sustained. The instalment note for $2,500 was produced by plaintiff and received in evidence. Indorsements thereon indicated payments up to January 5, 1933, and no payments thereafter. This was supplemented by the testimony of Frank V. Gilmore, who said in substance that he

was acquainted with the facts; that no payments had been made upon the instrument after January 5, 1933, and that plaintiff was the owner of the note, the mortgage and the assignment. There was no evidence to the contrary, and we think this was prima facie sufficient to show a default in payment and give validity to the assignment.

Defendant also says that the provision of the assignment purporting to impose a liability on himself to pay rent failed to fix a definite time when such rent should become payable and that there was therefore no default in the payment of rent at the time of the filing of the suit. This contention is, we hold, without merit. The assignment specifically provides for the payment of rent at the rate of $12 a room, and that payment should be made promptly on the first day of each and every month. The provision is not indefinite as we read it. Defendant objects that the writing does not state when the payments of rent should commence. As we construe it, such payment would begin on the first day of the month following any default after proper notice and demand by plaintiff. Here, the demand was made for $50 rent a month which was not as much as the total rent reserved in the written agreement but the amount per month which was due and payable each month according to the terms of the note and written assignment. The notice and demand were, we think, sufficient to fix the obligation of defendant and to inform him when the same should be performed.

Defendant contends in the next place that forcible entry and detainer will not lie because the facts do not bring this case within any one of the classes of cases described in section 2 of the forcible entry and detainer statute. Cahill's St. ch. 57, ¶ 2. (Smith-Hurd's Ill. Rev. St. 1933, ch. 57, sec. 2, p. 1525.) It is urged that this section is all inclusive and that such an action

will not lie in any case unless within one of the provisions of this section. That is not an accurate statement of the law as we understand it. Three sections of the Landlord and Tenant Act, Cahill's St. ch. 80, ¶¶ 5–8 (Smith-Hurd's Ill. Rev. St. 1933, ch. 80 secs. 5, 6, 7 and 8, p. 1771) describe circumstances under which the proceeding of forcible entry and detainer may be maintained. Section 14 of the same act extends the remedies "by entry action or otherwise" to grantees, assignees of the lessor and his heirs or personal representatives, and section 15 extends the same rights to lessees. These sections have widely extended the cases in which the proceeding of forcible entry and detainer is applicable.

Defendant relies on *Cody Trust Co. v. Dittmar,* 272 Ill. App. 167. In that case the third division of this court said it was unable to agree with the reasoning contained in the case of *West Side Trust & Savings Bank v. Gerstein,* 270 Ill. App. 250, and laid down this broad dictum:

" 'The person entitled to the possession of lands or tenements may be *restored* thereto in the manner hereafter provided:' From this provision it appears that the Forcible Entry and Detainer Act was intended to provide a means of securing possession for some party who had previously been in possession. The clauses 1 to 5 inclusive of paragraph 2 relate to the right to repossession by a party who had previously been in possession. The 6th clause, however, appears for the first time to provide for possession by forcible entry and detainer for those who were not originally possessed of the land." Again, referring to the *Gerstein* case, the opinion continues:

"We are of the opinion, however, that the court overlooked the proposition that forcible entry and detainer is an original action to repossess, rather than an action to obtain possession and that clauses two and

four cited in that opinion under section 2 of the Forcible Entry and Detainer Act, clearly are provisions for the repossession of property where the plaintiff at one time had possession and possession unlawfully withheld."

We cannot agree that the above is a correct statement of the law. However, it should, in the first place, be noticed that the instant case is clearly distinguishable from both these former cases. Indeed, the former cases are also distinguishable from each other. In the *Gerstein* case the question of possession arose between a tenant of the grantor in the trust deed and the trustee to whom the grantor had conveyed and also assigned the rents, issues and profits of the premises. The grantor had defaulted. The tenant refused to pay rent to the trustee. The question at issue was whether as between this tenant and the trustee the action would lie. In the *Cody* case the suit was brought against the grantor debtor by the trustee upon default in payment. In the instant case plaintiff bases his action upon an instrument in writing, under which it is claimed the relationship of landlord and tenant exists between plaintiff and the parties in possession, and it is claimed that the action will lie under clause 4 of section 2 of the forcible entry and detainer statute and section 8 of the Landlord and Tenant Act, which are in *pari materia*. Of course, if the sweeping dictum stated in the *Cody* case as to the nature of the action is correct, plaintiff could not recover in any one of these cases, and it is therefore necessary that the opinion in that case should be given careful consideration.

We find ourselves unable to agree with the emphasis placed by the opinion in the *Cody* case on the use of the word "restore" in the introductory clause of section 2. The phrase "restored to the possession" appears to have been first used in this statute in the act of July 1, 1872 (Public Laws of Illinois, 1871–2,

p. 458). The fact that in that statute it was made applicable to cases such as described in clauses 3 and 6, in which a prior actual possession was not necessary, indicates that there was no intention to give to this word any narrow and restricted meaning. Indeed, the fact that this word was used rather than a phrase with the verb "restitution" in it, indicates an interpretation different from that put upon it by the opinion in the *Cody* case. That we may arrive at the intention of the legislature it may be well to recall the circumstances under which the action of forcible entry and detainer had its origin. It arose in England under a feudal order of society in which lands were held and conveyed by livery of seizin. The first statute was that of Northampton, 2 Edward 3rd, chap. 3, followed by 5 Richard 2nd and 15 Richard 2nd. These statutes were purely criminal. They denounced the entry then known as a *"chivaucher"* which was a trespass *"manu forti,"* as distinguished from a trespass *"vi et armis."* These statutes provided for the punishment of these acts as criminal but gave to the person disseized no remedy. Bacon's Abridgment, Vol. 4, p. 321.

The later act of 8 Henry 6th, chap. 9, for the first time granted to a party thus disseized a remedy by way of restitution of possession with an action for treble damages known as an action "by assize of novel disseizin or action of trespass." 11 R. C. L. pp. 1136, 1137. These statutes were all strictly construed because they were supposed to declare a limitation on the right of a party recognized by the early common law to enter by force, if necessary, his own possessions. Of course, under such statutes, actual disseizin was an essential element of the offense denounced. The *Cody* case states the law as it then existed in England.

In some of the early English colonies these statutes were substantially re-enacted. In Illinois the first

forcible entry and detainer statute became a law February 24, 1819. Public Laws of Ill. 1819. The title of the act shows how wide was the departure from the English statutes of the same name. It was entitled, "An Act as to proceedings in ejectment, distress for rent and tenants at will holding over." It was repealed by the later act of June 1, 1827. Revised Laws of Ill. 1827, p. 228. So far as we are aware, it was construed by the Supreme Court but once. *Bloom v. Goodner,* Binmore's Breese 35 [Beecher's Breese, 63] and notes there cited. The opinion in that case distinguished clearly between the force necessary to constitute forcible entry and the peaceable holding over which might constitute a detainer, also covered by the statute. The opinion in the *Cody* case relies upon the statement of the law in 26 Corpus Juris, sec. 43, p. 816, from which it quotes at length. The language of that section must be construed in the light of the historical development of the action of forcible entry and detainer as above recited. It will be noticed that the author there carefully limits the statement made therein by the phrase "unless otherwise expressly provided by statute." Indeed, in section 74, p. 834 of the same volume, the author refers to Illinois as "a jurisdiction where prior possession is not essential as a basis for actions of this character." *Dudley v. Lee,* 39 Ill. 339; *Allen v. Webster,* 56 Ill. 393, are cited.

The present statute of forcible entry and detainer represents a continuous development of the act of June 1, 1827. That act in substance provided that if any person made an entry except where the right was given by law or entry by force or held over after the determination of the time for which the premises were let to him, "*or to the person under whom he claims*" after demand "*by the person entitled to such possession,*" such person shall be adjudged guilty of a forcible entry and detainer, or of forcible detainer, as

the case may be, within the intent and meaning of the act. Revised Laws of Ill. 1827, p. 228.

This act was construed in *Atkinson v. Lester*, 1 Scam. 407. There, the defendant requested the trial court to charge that to constitute a forcible entry the person must enter with strong hand, or force and violence; that a mere trespass was not sufficient. The court refused to so charge and told the jury that the Forcible Entry and Detainer Act was distinguished from the English law, in that if defendant wrongfully entered and without lawful right and kept plaintiffs out, it was sufficient, and that actual force as spoken of in the English statutes was not necessary. The opinion stated that under the statute the action would lie for (1) a wrongful or illegal entry, (2) a forcible one by violence, and (3) a wrongful holding over by a tenant.

In *Mason v. Finch*, 1 Scam. 495, the court again pointed out the distinction between the civil action in Illinois and the criminal action in England and said that the action in Illinois was more comprehensive, in that it authorized the action to be maintained against a lessee who holds over after the determination of his lease, whether he holds by force or not, provided the lessor has given written notice to quit.

To the same effect are *Ballance v. Curtenius*, 3 Gil. 449, and *Beel v. Pierce*, 11 Ill. 92.

The act of 1827 was substantially re-enacted in 1845. By the act of April 24, 1861 (Public Laws of Ill. 1861, p. 176) the statute was extended to all cases between vendor and vendee where the vendee had obtained possession of lands under a contract and before obtaining a deed refused to comply with the contract "and to all cases where lands have been sold under a judgment or decree of court in this state, and the party to such judgment or decree, after the expiration of the time of redemption, refuses after demand in writing

by the purchaser under the same to surrender possession thereof."

The amendment of 1861 is construed in *Jackson v. Warren*, 32 Ill. 331, where the court stated that this amendment had not been called to its attention in the prior case of *Steiner v. Priddy*, 28 Ill. 179, where the cases in which the action would lie were stated substantially to be those enumerated in *Atkinson v. Lester*, 1 Scam. 407. The court stated that the amendment of 1861 brought within the action two other classes of cases, namely, (1) where the vendee under a contract to purchase has entered into possession and before obtaining a deed refused to comply with the contract, and (2) where lands had been sold under judgment or decree and the party to the decree upon expiration of the time of redemption, after demand in writing by the purchaser, refused to surrender possession. The court there said that the Act of 1861 was remedial in its nature and should have a liberal exposition, so that the *assignee of the vendee,* or *a pendente lite purchaser from the mortgagor, could maintain the action.* This provision of the Act of 1861 seems to have been incorporated in the Act of 1874, as the sixth clause of section 2. See Revised Statutes of Ill. 1874, p. 535.

By section 4 of the act of February 16, 1861 (Public Laws of Ill. 1865, p. 108) the first section of the act was amended by stating that it should be construed as embracing "all cases where any person shall make any forcible or other entry into any vacant and unoccupied lot or premises, without color of right or title thereto, or shall hold over against the lessor, his heirs or assigns, after the term of the tenancy has expired; and where the covenant of a lease has been violated by the non-payment of rent when due, it shall be sufficient for the landlord, his agent or attorney, to make demand for payment of rent due on any day prior to

the commencement of his action of forcible detainer; and in the case mentioned in this section it shall only be necessary to give the person in possession ten days' notice to quit."

By the act of July 1, 1873, Cahill's St. ch. 80, ¶¶ 5–8 (Hurd's Ill. Rev. St. 1874, ch. 80, secs. 5, 6, 7 and 8) the right to bring the action of forcible entry and detainer or ejectment seems for the first time to have been provided for in the statutes relating to landlord and tenant. At the same time sections 14 and 15, extending remedies in favor of grantees, lessees, etc., were enacted.

By the act of July 1, 1881 (Cothran's Anno. Ed., Revised Stats. of Ill., 1882, p. 734) clause 6, section 2, of the Forcible Entry and Detainer Act was amended and extended to a grantee as against a grantor in possession.

No case is cited (and after some search we have not been able to find any case) in which it has been held (the relation of landlord and tenant existing) that the landlord may not avail himself of this action unless he has been theretofore in possession of the premises. On the contrary, it has been expressly held in *Fisher v. Smith,* 48 Ill. 184, that the grantee of the landlord may bring the action. It has also been held that where premises have been leased to a prospective tenant, who is unable to obtain possession by reason of a former tenant holding over after his term expired, the right to bring the action is vested in the lessee alone, who presumably has never before been in possession of the premises. *Gazzolo v. Chambers,* 73 Ill. 75; *Walsh & Co. v. Taylor,* 142 Ill. App. 46; *Jinkinson v. Owens,* 180 Ill. App. 122.

It is undoubtedly true that this action in its origin was in substance one for repossession by a party who had been disseized. We have no doubt that such in essence is the action provided by clause 1 of section 2

of the Illinois Act. It by no means follows that a similar construction should be placed on the other clauses of that section. Illustrative, is the case of *Thompson v. Sornberger*, 59 Ill. 326. There the complaint in substance averred forcible entry on May 1, 1866. In the Supreme Court the case turned on the sufficiency of proof that plaintiff was in possession of the premises when disseized. The court said there must be an invasion of actual possession; that constructive possession was not sufficient, and cited *McCartney v. McMullen*, 38 Ill. 237. An examination of that case discloses that plaintiff there brought an action alleging a forcible entry, but the proof showed that the premises were vacant and unoccupied. The case was brought prior to the amendment of the statute in that particular respect. The opinion cites five cases construing the forcible entry and detainer statute of Kentucky, and says:

"But they do not intimate that anything short of a *pedis possessio* can be held to support this action. And it is believed that no well considered case can be found which announces such a rule. Tested by these cases the evidence fails to support the verdict in this case." It is interesting to note that plaintiff in this case thereafter recovered a judgment which was affirmed in the Supreme Court. *Thompson v. Sornberger*, 78 Ill. 353.

In the later case of *Cairo & St. L. R. Co. v. Wiggins Ferry Co.*, 82 Ill. 230, the Supreme Court pointed out the distinction between the class of cases where the entry was by force upon actual possession and the class of cases where the relation of landlord and tenant was found to exist. The opinion stated:

"In an action of forcible entry and detainer, as has been held in *Thompson v. Sornberger*, 59 Ill. 326, and other cases in this court, it is necessary to aver and prove that the plaintiff was in possession of the prem-

ises, and that the possession was invaded by the defendant; but in an action of forcible detainer it is sufficient if the complaint shows the relation of landlord and tenant to have existed; that the time for which the premises were let has expired, and that the tenant persists in holding the premises after demand made in writing for the possession thereof. *Smith v. Killeck,* 5 Gilm. 293; *Dunne v. Trustees of Schools,* 39 Ill. 578.''

In *Whitehill v. Cooke,* 140 Ill. App. 520, a suit was brought by the heirs at law of the deceased owner against a defendant who had been in possession of the premises for many years. It was argued in behalf of the plaintiffs that by analogy of the construction of the fourth clause of the statute, the sixth should be held to include heirs at law and personal representatives of the deceased owner. The court refused to hold, stating by way of *obiter,* that it was only a *possessio pedis,* which may be restored *"under the first and second clauses of section 2 of the act."*

In *Thomasson v. Wilson,* 146 Ill. 384, it appeared that a Mrs. Laddness was in possession of the premises under a lease from Julia Wilson; that one Bell, a son of Mrs. Laddness, moved into the house with her. During the absence of Mrs. Laddness, Bell moved out and defendant Thomasson immediately moved in, claiming to enter and hold under a lease from a Mr. Clark. Rent was due from Mrs. Laddness and plaintiff gave notice terminating the lease and demanded possession from Mrs. Laddness and Thomasson. Upon the trial defendant asked the court to hold that plaintiff could not as the devisee or grantee of the lessor maintain the action without showing an attornment from the lessee. The court refused to so hold, and the Supreme Court said that the holding was correct, ''for the reason that the same right of entry, by action or otherwise, is given by the statute to the grantee of

the lessor as the lessor might have had. (Rev. Stat., chap. 80, sec. 14.)'' The court further said:

''It is undoubtedly true that the entry was made upon the possession of the tenant, and the right of action for forcible entry and detainer became complete in her at the moment of entry by appellant. (*Dudley v. Lee,* 39 Ill. 339.) But the same right to terminate the tenancy, and upon its termination to proceed for the unlawful detention of the premises, existed in the grantee as the original landlord might have exercised. (*Fisher v. Smith,* 48 Ill. 184; *Allen v. Webster,* 56 id. 393; *Gazallo v. Chambers,* 75 id. 56; *Dudley v. Lee, supra.*)'' Thomasson, however, urged that he had entered peaceably and without force under claim of right, and the court said that the question was sharply presented, whether, assuming his entry was without collusion with the tenant or those holding under her, the right of action against him was given by the statute. After reciting provisions of the Act of 1845, the court said:

''By the act of 1874 (Rev. Stat., chap. 57, sec. 2) the cases in which forcible detainer will lie were much enlarged. The second clause of section 2 of that act provides that persons entitled to the possession of lands or tenements may be restored thereto in the manner prescribed by the act, 'when a peaceable entry is made and the possession unlawfully withheld.' That this does not apply to tenants holding over, after the determination of the lease under which they entered, is made apparent by a consideration of the subsequent clauses. The third clause authorizes the action where the entry is made into vacant or unoccupied lands without right or title. The fourth relates to the holding over by a lessee of lands or tenements, or by any person under him, after the termination of the tenancy by its own limitation, 'or by notice to quit, or otherwise.' The fifth, to the relation of vendor and vendee,

and the sixth, to cases where land has been conveyed, or sold under decree or judgment, etc." The court added that "by the fourth clause every right given by the former statute to maintain forcible detainer, *where the relation of landlord and tenant existed, is retained in the present statute*"; that the fifth and sixth clauses gave the right where specified contractual relations existed or the title had passed by deed, or by operation of law; that those who acquired possession by open violence or by intrigue with those who had possession from the landlord, all stood in the shoes of the tenant (*Ballance v. Fortier*, 3 Gil. 291; *McCartney v. Hunt*, 16 Ill. 76; *Wall v. Goodenough*, 16 Ill. 415); that therefore when Thomasson refused to surrender possession after demand in writing, the detention was unlawful. The judgment against defendant in favor of plaintiff was affirmed.

In *Fitzgerald v. Quinn*, 165 Ill. 354, plaintiff sought to recover under the third clause of section 2 upon the theory that defendants, or their remote grantors, had entered upon the premises when the same were vacant without authority. He obtained judgment before a justice of the peace and also upon appeal to the circuit court. Defendants appealed to the Supreme Court which reversed the judgment, saying that the plaintiff lost sight of the true intent and scope of the act. Analyzing it, the court said that it provided for three general classes of cases: (1) where the original entry was forcible or unlawful, (2) where the original entry was lawful but the detention had become illegal, and (3) where the entry was peaceable but the possession unlawfully withheld.

The court said that the first and third clauses of section 2 made provision for the first class of cases (forcible or unlawful entry); that the fourth, fifth and sixth clauses made provision for cases that have their origin in contract and constituted the second of the

general classes mentioned, and the cases specified in the second clause of the statute constituted the third class, where the entry was peaceable but possession unlawfully withheld. The particular case, the court said, concerned the first of the three classes of cases. In such case, the forcible entry offense was consummated the moment entry was made, and the right of action would vest at once, in the one case (where the entry was by force) in him *whose actual possession was invaded, "in the other in him whose constructive possession . . . is invaded."* Such rights of action would not pass to the assignee. *Dudley v. Lee,* 39 Ill. 339; *Thomasson v. Wilson,* 146 Ill. 384. In these cases the action would lie only against the person who made the entry *or persons in privity with him.* A person entering in good faith could not be put out by this action. *Clark v. Barker,* 44 Ill. 349. Plaintiff argued that he had a remedy under the second clause, but the court said that under a somewhat similar statute of 1845 it was held there must be an entry "upon the actual possession of another." *Atkinson v. Lester,* 1 Scam. 407; *Whitaker v. Gautier,* 3 Gil. 443. The court then cited *Thomasson v. Wilson,* and held that the effect of these decisions was that under the second clause of the section there was no right of action except where there was a peaceable entry upon premises in the actual possession of plaintiff, *"or of those to whose rights he has succeeded."*

The *Cody Trust Co.* case cites *Aurner v. Pierce,* 106 Ill. App. 206. That was a proceeding under the sixth clause of section 2, and a judgment for defendant was affirmed. Having decided the case on other grounds, the court went on to say that plaintiff could not maintain the suit because he was not in possession of the premises, nor did he allege that grantees obtained possession from him. *Haskins v. Haskins,* 67 Ill. 446, was cited. The *Aurner* case however was

between a vendor and a vendee brought under the fifth clause of section 2 of the statute. The distinction between that case and one where the relationship of landlord and tenant exists was pointed out in a later opinion of the same court written by the same Justice. *Orthwein v. Davis,* 140 Ill. App. 107. The court there said that in the *Aurner* case "the relation of landlord and tenant did not exist."

*Knox v. Hunter,* 150 Ill. App. 392, also relied on in the *Cody* case, was decided by the Appellate Court of the Second District upon a record where no motion for a new trial was preserved in the bill of exceptions. The court said that the only clause of section 2 of the forcible entry and detainer statute "possibly applicable" was the sixth.

In the last analysis the question is one of statutory construction. It is settled in Illinois that forcible entry and detainer is a special statutory proceeding summary in its nature and in derogation of the common law. *Chicago v. Chicago Steamship Lines,* 328 Ill. 309. The court in this proceeding derives its power wholly from the statute. *Burns v. Nash,* 23 Ill. App. 552; *French v. Willer,* 126 Ill. 611.

We hold that only in cases brought under clause 1 of section 2 of the act is actual prior possession by the plaintiff indispensable. Only in such cases is the action essentially one for repossession where proof of a former *"pedis possessio"* by the plaintiff is necessary. For the sources from which section 2 of our act was derived, Mr. Addington's notes in Illinois statutes, Anno. Jones & Addington, 1913, vol. 3, chap. 57, sec. 5843, pp. 3144–3155, have been found accurate and helpful.

The instant suit is based on clause 4 of section 2 of the Forcible Entry and Detainer Act, Cahill's St. ch. 57, ¶ 2, and section 8 of the Landlord and Tenant Act, Cahill's St. ch. 80, ¶ 8, which are in *pari materia.*

After an extended search we find no case in the books in which an action based on these two sections, or any one of them, is held to be limited to plaintiffs who theretofore had been in actual physical possession of the premises. We hold that plaintiff is not precluded by that fact from maintaining its suit, and the judgment of the trial court is therefore affirmed.

*Affirmed.*

O'Connor and McSurely, JJ., concur.