(No. 16564.—Order affirmed.)
THE CITY OF CHICAGO, Appellee, *vs.* THE CHICAGO STEAMSHIP LINES, INC., Appellant.

*Opinion filed December 21, 1927.*

1. FORCIBLE DETAINER—*jurisdiction of courts is statutory—appeal.* As the action of forcible entry and detainer is a special statutory proceeding summary in its nature and in derogation of the common law the jurisdiction of courts in regard thereto is limited by statute, and the question whether a right of appeal or writ of error exists is governed by the provisions of the statute.

2. SAME—*Appellate Court cannot review decision of municipal court on writ of error.* As the statute gives only a right of appeal in an action of forcible entry and detainer the Appellate Court has no jurisdiction to entertain a writ of error to review a judgment of the municipal court in such action, and the right of appeal can only be availed of by following the particular method prescribed by the statute. (*Kepley* v. *Luke,* 106 Ill. 395, distinguished.)

3. APPEALS AND ERRORS—*writs of error are not writs of right in statutory proceedings.* While writs of error are writs of right in all cases that are prosecuted according to the course of the common law, they are not writs of right in special statutory proceedings, which are in derogation of the common law.

APPEAL from the First Division of the Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. DANIEL P. TRUDE, Judge, presiding.

HARRY C. BARNES, (ALAN C. McILVAINE, of counsel,) for appellant.

FRANCIS X. BUSCH, Corporation Counsel, (ALBERT H. VEEDER, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The city of Chicago, appellee, brought an action of forcible detainer in the municipal court of Chicago against the Chicago Steamship Lines, Inc., appellant, and the Rutland Lake Michigan Transit Company, for possession of the east 140,000 square feet of floor space on the first floor of the south shed of the municipal pier, with docks alongside, in the city of Chicago, and also a claim for $10,000 for use and occupation of the floor space aforesaid. The cause was tried before the court without a jury, and judgment was rendered in favor of the appellee against both defendants for possession of the premises and for damages in the sum of $7199 and execution was awarded therefor. The judgment for rent or damages against both defendants was vacated and judgment for said sum was entered against appellant only, and that judgment was immediately paid and the clerk directed to satisfy the same of record. The motion of appellant to vacate judgment for possession was denied. A writ of error was sued out of the Appellate Court for the First District to review the judgment of the municipal court. The city of Chicago entered its appearance in the Appellate Court, and thereafter an order of severance was entered as to the Rutland Lake Michigan Transit Company, and appellant was granted leave to prosecute a writ of error as sole plaintiff in error.

The city of Chicago thereafter filed a motion to dismiss the writ of error on the ground that the Appellate Court was without jurisdiction to entertain the same, which motion was allowed and the writ dismissed. The Appellate Court granted a certificate of importance and an appeal to this court, which has been perfected by appellant.

The facts and questions of law submitted to the trial court are stipulated in the record, from which it appears that on recommendation of the harbor board the city council of Chicago by ordinance authorized the commissioner of public works to enter into a lease on behalf of and in the name of appellee, with appellant, for the use of the 140,000 square feet on the first floor of the south freight and passenger building on the municipal pier for a period of five years thereafter, at an annual rental of $28,000. The April rent of $2333.33 for the year 1923, the first month of the lease, was paid. The rent for the months of May and June of that year was tendered and was refused by the city because of an opinion rendered by the corporation counsel to the commissioner of public works to the effect that the lease was *ultra vires* and void and that acceptance of the rent under the lease might prejudice the city's right in a proceeding for possession. The city offered to accept the amount so tendered for use and occupation of the premises without prejudice to its contention that the lease was void, but payment under such conditions was refused by appellant. The city thereafter brought this suit for possession on the theory and on the claim that the lease was *ultra vires* and void. Appellant admitted in open court that it owed appellee $7199 for rent and electricity and consented that judgment be entered against it for that sum. It contended that this suit was not rightfully brought, because the city served a five-day notice (the minimum time allowed by statute) instead of a thirty-day notice, as provided in section 13 of the lease, to the effect that the lessee agrees that if default shall be made by it in the payment

of any of the rent provided for upon the day the same becomes due and payable, and such default continues thirty days after notice thereof in writing by the lessor or its agents or attorneys to the lessee, etc., it shall and may be lawful for the lessor, at its election, to declare said demised term ended, etc. Appellee contended that by virtue of section 16 of the lease its rights were cumulative and that it was not precluded from proceeding under the five-day limit fixed by the statute, and the lower court so held and entered the judgment aforesaid after overruling appellant's motion for a new trial and in arrest of judgment.

The controlling question for decision by this court is whether or not appellant had the right, under the law of this State, to have the judgment of the municipal court reviewed in the Appellate Court by writ of error. At common law if anyone had a right of entry he was permitted to enter with force and arms and to retain his possession by force, where his entry was lawful. (3 Bacon's Abridgment by Gwillim, p. 248.) It is also stated by this author that this right of entry by the lords created great inconvenience by their arming their tenants and in a manner encouraging those in mischief, who were always too forward in rebellions and contentions in their neighborhood; also that it gave an opportunity to powerful men, under the pretense of feigned titles, forcibly to eject their weaker neighbors. To remedy these evils several statutes were passed, purely criminal in their main features, the first being that of 5 Richard II, chapter 8, which provided: "That none from thenceforth should make any entry into any lands and tenements but in cases where entry is given by law, and in such cases not with strong hand nor with multitude of people but only in a peaceable and easy manner; and if any man from henceforth should do the contrary, and thereof be duly convict, he should be punished by imprisonment of his body and thereof ransomed at the king's will." Said statute, as stated in the side notes to Bacon's

Abridgment, (vol. 3, p. 249,) gave no speedy remedy, leaving the party injured to the common course of proceeding by way of indictment and made no provision at all against forcible detainer. It was followed later by 15 Richard II, chapter 2, which provided that said statute, and all others against forcible entries, should be duly executed; "and farther, that at all times that such forcible entry shall be made and complaint thereof cometh to the justices of the peace, or to any of them, that the same justices or justice take sufficient power of the county and go to the place where the force is made, and if they find any that hold such place forcibly, after such entry made, they shall be taken and put into the next gaol, there to abide, convict by the record of the same justices or justice, until they have made fine and ransom to the king." As stated by the author, this latter statute gave no remedy against those who were guilty of forcible detainer after a peaceable entry, or against those who were guilty of both a forcible entry and detainer, if they were removed before the coming of a justice of the peace, and it gave the justice of the peace no power to restore the party to his possession. Such power to restore the ousted party to his possession was later given by 8 Henry VI, chapter 9, in this language: "That though such persons making such entries be present, or else departed before the coming of the said justices or justice, notwithstanding the same justices or justice in some good town next to the tenement so entered, or in some other convenient place, according to their discretion, shall have, and either of them shall have, authority and power to inquire by the people of the same county, as well of them that makes such forcible entries in lands and tenements, as of them which the same held with force; and if it be found before any of them that any doth contrary to this statute, then the said justices or justice shall cause to re-seize the lands and tenements so entered and holden as aforesaid, and shall put the party so put out in full pos-

session of the same lands and tenements so entered or holden as before." This statute also gave the party aggrieved a remedy by assize of novel disseizin or by an action of trespass to recover treble damages for being ousted by force. It appears from the authorities cited by the author in his side notes, that to said actions the defendant might plead in bar thereof that he had good title and right of entry before his unlawful entry, if in his plea he further traversed the entry by force. If the matter in bar was found for the defendant,—that is, that he had good title at law and right of entry,—he prevailed in the suit for the reason that the party ousted should not recover if he had no right to damages, but if the plaintiff prevailed then the force must be inquired of, and treble damages assessed to plaintiff in case the plaintiff succeeded on that issue. The statute of 8 Henry VI further provided: "That they who keep their possessions with force in any lands and tenements whereof they or their ancestors, or they whose estate they have in such lands and tenements, have continued their possession by three years or more, be not endamaged by force of this statute." This last provision is further enforced and explained by 31 Elizabeth, chapter 11, which provides: "That no restitution upon any indictment of forcible entry or holding with force be made to any person if the person so indicted has had the occupation or been in quiet possession for the space of three whole years together next before the day of such indictment so found and his estate therein not ended, which the party indicted may allege for stay of restitution, and restitution to stay till that be tried, if the other will deny or traverse the same." For the provisions of said statutes and comments aforesaid, see 3 Bacon's Abridgment by Gwillim, pp. 249-252.

It clearly appears from a consideration of the English authorities that the remedy for the restitution of premises, grounded on forcible entry and detainer, was unknown to

the common law and was purely statutory in its origin. It also appears from a consideration of the English statutes aforesaid that they afforded no remedy for a forcible detainer of lands or tenements except in cases where the entry into such lands was made by force and in cases where the entry was made peaceably but without lawful right and was held by force. To maintain an indictment founded upon those statutes it was necessary to allege and prove the possession or seizin of the prosecutor and a forcible entry or a forcible detainer without right, or both a forcible entry and detainer. The word "forcible," as used in those statutes, was held to mean actual force as distinguished from that force which is implied from an unlawful entry, merely, such as breaking open doors or other like violent acts, or in cases where an entry was effected by means of threats or intimidation, such as being attended by an unusual number of persons or by making a display of dangerous weapons. (3 Bacon's Abridgment, p. 252.)

The civil remedy in this State for the restitution of premises, based on forcible entry and detainer, was unknown to the common law and is purely statutory in its origin. While our statute on forcible entry and detainer contains some of the ideas found in the English statutes aforesaid, particularly the statutes of Henry VI, they do not embody all of the features of any of those statutes, and they cannot be said to be an adoption of any of them in their entirety or of any other English statute. It has been repeatedly decided by this court that an action of forcible entry and detainer is a special statutory proceeding summary in its nature and in derogation of the common law, and that our courts do not proceed thereon by virtue of their power as courts of general jurisdiction but derive their authority wholly from the statute, and in such a proceeding they are to be considered and treated as a court of special and limited jurisdiction. (*French* v. *Willer*, 126 Ill. 611; *Wells* v. *Hogan*, Breese, 337; *Fitzgerald* v. *Quinn*,

165 Ill. 354.) The action being a special statutory proceeding in derogation of the common law the statute must be strictly followed as to the remedy pursued, and attention must be had to the provisions of the statute to determine whether an appeal or writ of error, or both, are allowed to review the judgment of the trial court in such a proceeding. Section 18 of our present act on forcible entry and detainer provides: "If any party shall feel aggrieved by the verdict of the jury or decision of the court, upon any trial had under this act, such party may have an appeal, to be taken to the same courts, in the same manner and tried in the same way as appeals are taken and tried in other cases: *Provided,* the appeal is prayed and bond is filed within five days from the rendition of the judgment, and no writ of restitution shall be issued in any case until the expiration of said five days." Nowhere in the entire act, or in any other act, is there to be found any provision for a writ of error in such cases. It is true that writs of error are writs of right in this State in all cases that are prosecuted according to the course of the common law, but this court has frequently held that writs of error are not writs of right in special statutory proceedings, which are in derogation of the common law. *Kingsbury* v. *Sperry,* 119 Ill. 279; *Sweeney* v. *Chicago Telephone Co.* 212 id. 475; *Devous* v. *Gallatin County,* 244 id. 40.

Appellant contends that the remedy of forcible entry and detainer existed in Illinois long before the statute on that question was enacted and now exists by virtue of chapter 28 of our statute, providing that the common law of England, so far as the same is applicable and of a general nature, and all statutes or acts of the British parliament made in aid of and to supply the defects of the common law, prior to the fourth year of James I, excepting the second section of the sixth chapter of 43 Elizabeth, the eighth chapter of 13 Elizabeth and the ninth chapter of 37 Henry VIII, and which are of a general nature and not local to that

kingdom,, shall be the rule of decision and shall be considered as of full force until repealed by legislative authority. We cannot agree with this contention. The first act of our General Assembly against forcible entry and detainer was approved February 24, 1819, and was expressly repealed by section 6,—the last section of "An act concerning forcible entry and detainer," approved February 2, 1827, and in force June 1, 1827. (Rev. Code of Laws of 1827, p. 228.) The first section of the act of 1827 provided that if any person should make any entry into any lands, tenements or other possessions, except in cases where entry was given by law, or should make any such entry by force, or if any person should willfully and without force hold over any lands, tenements or other possessions after the determination of the time for which such land, tenements or possessions were let to him, or to the person under whom he claims, after demand made in writing for possession thereof by the person entitled to such possession, such person should be adjudged guilty of a forcible entry and detainer, or of forcible detainer, as the case might be, within the intent and meaning of the act. Sections 2 and 3 of the act provided for a trial before any two justices of the peace of any county of this State and a jury of twelve men to be summoned by the sheriff, after the defendant had been duly served with summons. Section 4 of the act expressly provided that no indictment or inquisition should be necessary in any case arising under the act, and further provided that the complaint of the party aggrieved should be in writing and verified by his oath. Section 5 of the act provided for an appeal from the justices of the peace to the circuit court in the same manner as in other cases. This act continued to be the law, with very slight change, until the amendment thereof in 1872, the principal change being that such trial might be had before any justice of the peace in the State. Sections 1 and 2 of the act of 1872 are substantially the same as sections 1 and 2 of the

Forcible Entry and Detainer act now in force. The appeal allowed in the act of 1872 was from the justice of the peace to the county court. This act continued to be the law of Illinois until the revision thereof in 1874, and the law of 1874 on the subject of forcible entry and detainer was substantially the same as the law concerning forcible entry and detainer now in force, section 17a, added in 1921 and amended in 1923 and 1925, having become inoperative July 1, 1927, for want of a further act continuing it in force. Since the passage of the act of 1874 the complaint in a suit for forcible entry and detainer or for an unlawful detainer may be filed in any court of record or with any justice of the peace in the county where the premises are situated, and the summons directed to the sheriff or a constable of the county to be executed, and it is by virtue of said provisions that courts of record may obtain original jurisdiction in such proceedings. The provisions of sections 1 and 2 of our Forcible Entry and Detainer act have been since the act of 1872, that no person shall make an entry into lands or tenements except in cases where entry is allowed by law, and in such cases he shall not enter with force but in a peaceable manner.

Persons entitled to the possession of lands or tenements may be restored thereto (1) when a forcible entry is made thereon; (2) when a peaceable entry is made and the possession unlawfully withheld; (3) when entry is made into vacant or unoccupied lands or tenements without right or title; (4) when any lessee or other person holding under him holds possession without right after the determination of the lease or tenancy by its own provision or by notice to quit or otherwise; (5) when a vendee, having obtained possession under agreement to purchase lands or tenements and having failed to comply with his agreement, withholds possession after demand in writing by the person entitled to possession; and (6) when lands or tenements have been conveyed by any grantor in possession, or sold under a

judgment or decree or by virtue of any sale given in any mortgage or trust deed, and the grantor in possession, or party to the judgment or decree or to such mortgage or trust deed, after the expiration of the time of redemption allowed by law, refuses or neglects to surrender possession after demand made in writing to the person entitled thereto or his agent.

It is clear from a review of our statutes as to forcible entry and detainer that the English statutes aforesaid have not been in force in Illinois as a part of the common law thereof since the first act against forcible entry and detainer was passed by our legislature, February 2, 1827. If the English statutes are to be treated as a modification of the common law, and, by virtue of the passage of chapter 28 of our statutes approved February 24, 1819, the common law as so modified was the law of Illinois after chapter 28 was approved, it is clear that the common law as so modified was abrogated by the statute against forcible entry and detainer approved February 2, 1827, and by our present act against forcible entry and detainer, which differ very materially from the English statutes and from the common law, both as to the substance of the law and as to the remedies for the enforcement of it. It is for this reason that this court has so often declared that an action for forcible entry and detainer in this State is a special statutory proceeding summary in its nature and in derogation of the common law, and it is for the same reason that we must hold in this case that the Appellate Court had no jurisdiction to entertain a writ of error to review the judgment of the municipal court, as the statute gives only a right of appeal in such cases, which appeal can only be availed of by following the particular method prescribed by the statute. The time allowed for an appeal under the statute had entirely elapsed when the writ of error was sued out in this case, and to allow a writ

of error would defeat the very purposes of the statute specially limiting the right of appeal in such cases.

Our attention is directed by appellant to the fact that this court in the case of *Kepley* v. *Luke*, 106 Ill. 395, held that as a freehold was not involved in the action of forcible detainer a writ of error did not lie from this court to the trial court and that such writ should emanate from the Appellate Court. The writ in that case was dismissed solely on the ground that no freehold was involved. The contention was never made by either party in this court that the only mode for review in a forcible entry and detainer suit was by appeal, as specially provided by the Forcible Entry and Detainer act, and this court does not feel bound by that decision, as it is clearly evident that the actual question now before us was not considered by this court in the *Kepley case,* and that decision is over-ruled in so far as it conflicts with the ruling in this case. The Appellate Court, as shown by appellant in two cases cited by it, has been led into the same error as was made in the *Kepley case,* but in the case of *Wentworth* v. *Sankstone,* 233 Ill. App. 48, the Appellate Court for the First District gave consideration to the question now before us and expressly held that the only mode of review in a forcible entry and detainer suit is by appeal, as we now hold. This court, on a review of that case on October 20, 1924, denied a petition for a writ of *certiorari,* as will appear from our order of that date entered in case No. 16272, Sankstone *vs.* Wentworth. The writ was denied for the same reason that the Appellate Court refused to entertain the writ of error, and there has been no decision contrary to the decision in that case and in the case now before us, except the one in the *Kepley case.*

The order of the Appellate Court dismissing the writ of error for want of jurisdiction is affirmed.

*Order affirmed.*