STUART PERRY *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* EVANSTON YOUNG MEN'S CHRISTIAN ASSOCIATION *et al.*, Defendants-Appellees and Cross-Appellants.

First District (5th Division)    No. 79-1393

Opinion filed January 23, 1981.

Barry Rose, of Evanston, for appellants.

Jerry A. Esrig, of Chapman & Royce, Ltd., of Chicago, for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiffs, Stuart Perry and Clifton Amoss, are former residents of the building operated by defendant, Evanston Young Men's Christian Association (YMCA). Defendant Roth Holtz is the Associate Executive Director of the YMCA. Plaintiffs brought this action alleging defendants forcibly entered each of their rooms in violation of the forcible entry and detainer statute (Ill. Rev. Stat. 1977, ch. 57, par. 1 *et seq.* ("the statute").) Plaintiffs request actual damages and also the "liquidated damages" provided in section 23 1/2—4.207 of the Evanston Residential Landlord and Tenant Ordinance (Code of the City of Evanston (1957, as amended), ch. 23 1/2, §23 1/2—1.01 to 5.104) ("the ordinance")). Upon cross-motions, summary judgment was entered: (1) for defendants and against plaintiffs as to damages under the ordinance; and (2) for plaintiffs and against YMCA for violation of the statute with nominal damages of $1 and costs. Plaintiffs appealed and defendants cross-appealed.

The issues presented are whether: (1) defendants were guilty of forcible entry as to each of the plaintiffs' rooms; (2) plaintiffs' complaint claimed actual damages under the statute; and (3) the YMCA is exempt from the ordinance by its terms.

The following pertinent facts appear from the pleadings, affidavits and exhibits.

YMCA is an organization which leases rooms to over 160 residents at stipulated weekly rates. Plaintiffs are former residents. Perry occupied Room 536 from December 12, 1976, to April 10, 1977. Amoss occupied Room 427 from September 12, 1976, until May 5, 1977. Each signed a separate residence hall agreement with defendants providing, *inter alia*: (1) to pay a stipulated rental charge in advance; (2) to observe "quiet hours" between 11 p.m. and 7:30 a.m.; (3) that one day's notice by either party cancels the contract; and (4) that the YMCA may require the immediate vacating of rooms for violation of rules, failure to make room rent and membership payments in advance, unseemly conduct, immorality, or any other good cause.

On April 5, 1977, defendants wrote a note to Perry that he was playing his radio too loud and that, if he continued, he would be evicted. On April 7, 1977, defendants informed Perry by letter that because of his violation of quiet hours, he would be evicted at 2 p.m. on April 10, 1977. On the same day Perry wrote a letter advising defendants that the noise emanated from another room. On April 8, Holtz acknowledged receipt of Perry's letter but again stated he would be evicted at 2 p.m. on April 10.

Perry and Holtz had had a previous confrontation regarding the use of the YMCA's gym equipment. As a result, defendants had "plugged" Perry's door by placing an object in the lock, making it impossible for him to enter his room. Because of this prior encounter, Perry maintains that he had good reason to believe that Holtz, although not threatening such action, would "plug" his door to his room to effect an eviction at this time. Perry states that in order to avoid a breach of peace, he therefore vacated the premises at 1 p.m. on April 10, 1977.

On April 20, 1977, Holtz informed Amoss that there was too much noise coming from his room. On May 4, 1977, Holtz left a note in Amoss' mailbox stating he would be evicted the following day, May 5, 1977, at 2 p.m. On May 5, 1977, at about 3 p.m., Holtz confronted Amoss and said that if Amoss did not leave the premises that Holtz would place an object ("plug") in the lock of his door so that he could not gain access to his room. Amoss stated that to avoid a breach of the peace, he vacated the room at 3:30 p.m. on May 5, 1977.

On cross-motions for summary judgment, the order granting judgment found YMCA exempt from the provisions of the Evanston Landlord-Tenant Ordinance in that plaintiffs' occupancy constituted "transient occupancy in a hotel" within the meaning of section 23½—1.202(d); that the act of "plugging" and threatening to "plug" plaintiffs' doors constituted forcible entry under the statute and that plaintiffs had not claimed actual damages in their complaint. Accordingly, judgment was entered

for defendants as to the damage claimed under the ordinance, for plaintiffs as to the statutory violations with nominal damages of $1 and costs. The appeal and cross-appeal are from the order of judgment.

OPINION

I.

Defendants, on cross-appeal, contend that they did not violate the forcible entry and detainer statute in that both Perry and Amoss voluntarily gave up possession of their rooms. They admit that an hour after the time set for Amoss' eviction, Holtz did state to Amoss that the door to his room would be locked or "plugged" if he did not leave the premises. Defendants argue that no YMCA personnel entered either room until both plaintiffs had left and no one used or threatened to use force upon the plaintiffs in order to gain entry.

Plaintiffs contend that actual force is not necessary to constitute a forcible entry within the meaning of the forcible entry and detainer statute. They argue that because of implied force they were compelled against their will, and without having an opportunity to contest the grounds of their eviction, to vacate their respective rooms; and that the threatened lockouts constitute forcible entries in contravention of this statute.

Section 1 of the forcible entry and detainer statute provides:

"That no person shall make an entry into lands or tenements except in cases where entry is allowed by law, and in such cases he shall not enter with force, but in a peaceable manner." Ill. Rev. Stat. 1977, ch. 57, par. 1.

■■■ The purpose of this statute is to adjudicate the right to possession (*Dobsons, Inc. v. Oak Park National Bank* (1980), 86 Ill. App. 3d 200, 407 N.E.2d 993; *General Parking Corp. v. Kimmel* (1979), 79 Ill. App. 3d 883, 398 N.E.2d 1104) and to prevent breaches of the peace by compelling aggrieved persons to assert their rights by peaceable means through the courts. (*D. J. Bielzoff Products Co. v. James B. Beam Distilling Co.* (1954), 3 Ill. App. 2d 530, 533, 123 N.E.2d 135, 137.) However, this statute is in derogation of the common law which permitted an individual rightfully entitled to enter to do so with force and arms and retain possession by force. (*City of Chicago v. Chicago Steamship Lines, Inc.* (1927), 328 Ill. 309, 159 N.E. 301.) Consequently, recovery under this statute is confined to cases strictly within its provisions. (*Biebel Roofing Co. v. Pritchett* (1940), 373 Ill. 214, 25 N.E.2d 800, *transferred* (1940), 307 Ill. App. 247, 30 N.E.2d 196; *Menagh v. Hill* (1956), 12 Ill. App. 2d 80, 138 N.E.2d 707.) Accordingly, where an entry is made by one having a paramount title and a right to immediate possession, in a peaceable and orderly manner, followed by no violence or intimidation, for the purpose

of holding possession, no offense is committed under the statute. *Fort Dearborn Lodge No. 214, I.O.O.F. v. Klein* (1885), 115 Ill. 177, 3 N.E. 272; *Eichengreen v. Appel* (1892), 44 Ill. App. 19; 36A C.J.S. *Forcible Entry and Detainer* §17, at 975 (1961).

Each plaintiff signed a rental agreement which provided that either party may terminate said agreement with one day's notice. While both plaintiffs admit that they agreed to reduce the statutory notice period or waive it entirely under certain proscribed conditions,[1] they argue that they in no way waived the protection of the forcible entry and detainer statute. They argue, in the face of actual or threatened lockouts, they had two options: (1) be involved in committing breaches of the peace in order to retain possession of their rooms; or (2) choose, as they did, to leave without violence albeit against their wills and assert their legal rights at a later date.

Plaintiffs, relying on *Harper v. Sallee* (1940), 376 Ill. 540, 34 N.E.2d 860, *Bugner v. Chicago Title & Trust Co.* (1917), 280 Ill. 620, 117 N.E. 711, and *Hammond v. Doty* (1900), 184 Ill. 246, 56 N.E. 371, argue that actual force is not necessary to constitute a forcible entry within the meaning of the statute, and that it is sufficient if possession is taken without the tenant's consent.

The above-cited cases rely on *Phelps v. Randolph* (1893), 147 Ill. 335, 35 N.E. 243. There, the tenant disregarded a notice to surrender possession of the premises and continued in possession. A few days later, while the tenant was absent in Chicago, the owner proceeded to the pasture, drove out the tenant's cattle and horses, removed all feed and improvements, and nailed up the gates. That court held:

> " 'To constitute forcible entry and detainer, under our statute, it is not essential that the entry be made with strong hand or be accompanied with acts of actual force or violence, either against person or property. If one enters into the possession of another against the will of him whose possession is invaded, however quietly he may do so, the entry is forcible, in legal contemplation. The word 'force,' in our statute, means no more than the term *vi et armis* does at common law,—that is, with either actual or implied force.' " 147 Ill. 335, 339-40, 35 N.E.2d 243, 245.

Similarly, in *Harper v. Sallee* (1940), 376 Ill. 540, 34 N.E. 860, while no actual breach of the peace occurred, Harper entered and took possession of a tract of land without Mrs. Sallee's consent after her tenant's lease had expired. Unlike the present situation, Mrs. Sallee not

---

[1] Illinois case law has held valid similar provisions reducing statutory notice periods; e.g., *Sjostrom & Sons, Inc. v. D. & E. Mall Restaurant, Inc.* (1975), 29 Ill. App. 3d 1082, 332 N.E.2d 62; *Trust Co. v. Shea* (1954), 3 Ill. App. 2d 368, 122 N.E.2d 292; *Balaban & Katz Corp. v. Channel Amusement Co.* (1949), 336 Ill. App. 113, 83 N.E.2d 27.

only refused to relinquish possession of the premises but alleged she was entitled to continued possession.

In *Bugner v. Chicago Title & Trust Co.* (1917), 280 Ill. 620, 117 N.E. 711, the Hamich boys entered into appellant's land in order to build fences on the northeast corner. That court held that it was not essential that the entry be made with a strong hand or be accompanied with acts of actual violence against person or property. If one enters into the possession of another against the will of one whose possession is invaded, however quietly he may do so, the entry is forcible in legal contemplation.

In *Hammond v. Doty* (1900), 184 Ill. 246, 56 N.E. 371, the appellee had possession of a tract of land upon which the appellants came, cutting down and carrying off the fences and turning their cattle upon the premises. That court reasoned that where a person is in possession of a tract of land, cultivating it or using it for pasture but not residing upon it, his absence from the land is not a license or invitation for one to enter, and held that an entry, in the absence of the party in possession, against his will may be regarded as forcible, and in violation of the statute.

Unlike the present situation, in each of the above-cited cases, the defendant actually entered upon the plaintiff's premises while he was still in possession and which had the effect of excluding him from that possession. The gist of these cases is that entry in fact will be deemed forcible so long as it is against the will of the person in actual possession. These cases did not address the issue of whether a threat to enter (or as in this case a threat to "plug" plaintiffs' doors) without some overt act in furtherance of that threat was sufficient to constitute a forcible entry.

The general rule is that an action under a forcible entry and detainer statute may not be maintained where an individual's possession is terminated prior to the alleged wrongful entry, by lawful surrender or transfer, by voluntary abandonment or by eviction which has ripened into a peaceful possession on the part of the intruder. (35 Am. Jur. 2d *Forcible Entry and Detainer* §27, at 907 (1967).) Accordingly, Illinois courts have held that an invasion of an individual's actual possession of the premises at the time of the alleged entry is a prerequisite to recovery. *West Side Trust & Savings Bank v. Lopoten* (1934), 358 Ill. 631, 193 N.E. 462; *Davis v. Robinson* (1939), 302 Ill. App. 365, 23 N.E.2d 816; *Laskodik v. Tomashumes* (1911), 161 Ill. App. 598.

In the instant case, Perry was given written notice on April 7, 1977, that because of quiet hours violations he would be evicted at 2 p.m. on April 10. This notice was in accordance with the rental agreement and terminated Perry's right to possession of his room. It is the duty of a tenant to surrender possession at the expiration of his lease. *Klesath v. Barber* (1972), 4 Ill. App. 3d 86, 280 N.E.2d 283; *Karagianis v. Stathopulos* (1928), 248 Ill. App. 297; 24 Ill. L. & Prac. *Landlord & Tenant* §301, at 356 (1980).

■■ Perry does not allege that this notice was insufficient to terminate his right to possession nor does he claim any right to continued possession. He merely asserts that due to a previous confrontation with Holtz in which his door was actually "plugged" that he had good reason to believe that he would do so again. No matter how well founded this belief may have been, the fact remains that no actual or implied force, threat of force or intimidation was used to gain entry to Perry's room. Perry's departure at 1 p.m. on April 10, 1977, is consistent with the termination of his right to possession. He did no more than that required by any tenant on the expiration of his lease. Although the record does not show at what point defendants entered Perry's room, it is uncontested that neither Holtz nor any YMCA personnel entered his room until after he vacated the premises. Since Perry was no longer in possession of his room at the time of the alleged entry, defendants did not enter against his will. Consequently, defendants' actions did not constitute a forcible entry.

Amoss, on the other hand, received written notice on May 4, 1977, stating that he would be evicted at 2 p.m. on May 5 because of the excessive noise emanating from his room. Around 3 p.m. on May 5, Holtz confronted Amoss and said that if Amoss did not leave the premises that Holtz would place an object ("plug") in the lock of his door so that he could not gain access to his room. Holtz took no further action and made no attempt to forcibly evict Amoss or to enter his room. Amoss then vacated his room at 3:30 p.m. Like Perry, Amoss does not allege that defendants' notice was insufficient to terminate his right to possession of his room nor does he claim a continued right to possession. Rather, Amoss argues that Holtz' statement to leave or have the lock on his door "plugged" constituted a forcible entry.

Although this court has recognized a forcible entry where defendants actually changed the locks to a dental office, thereby depriving plaintiff access to his personal property located therein (*Faubel v. Michigan Boulevard Building Co.* (1934), 278 Ill. App. 159), plaintiffs have not cited nor has research disclosed any case that supports their position that a threat to place an object ("plug") in the lock of the door, without some demonstrable force or other overt act, is sufficient to constitute forcible entry.

Actually, Amoss is attempting to argue that Holtz' statement amounted to a constructive eviction which was accompanied by implied force since it was against his will and therefore constituted a forcible entry under the statute. A constructive eviction has been defined as something of a grave and permanent character with the intent of depriving the tenant of enjoyment of the premises. (*Wainwright v. Lyons* (1979), 73 Ill. App. 3d 1043, 1045, 392 N.E.2d 783, 785, quoting *Gillette v. Anderson* (1972), 4 Ill. App. 3d 838, 842, 282 N.E.2d 149, 151; *John Munic Meat Co.*

*v. H. Gartenberg & Co.* (1977), 51 Ill. App. 3d 413, 416, 366 N.E.2d 617, 620.) A constructive eviction requires conduct or acts on the part of the landlord, not mere words. *Wainwright v. Lyons*; see also *Smith v. Bellrose* (1916), 200 Ill. App. 368.

■■ For an act to constitute a constructive eviction, it must disturb the tenant's possession or amount to a clear indication on the part of the landlord to deprive the tenant of the enjoyment of the premises. (*Lippman v. Harrell* (1976), 39 Ill. App. 3d 308, 349 N.E.2d 511.) Mere notice to the tenant to vacate the premises is insufficient to constitute an eviction. (*Lippman v. Harrell*; 49 Am. Jur. 2d *Landlord & Tenant* §305, at 321 (1970).) Where the landlord tells the tenant to leave and the tenant replies that it is all right and removes his possessions, there is no eviction but only a voluntary surrender. 49 Am. Jur. 2d *Landlord and Tenant* §301, at 315 (1970); see also *Boyd v. Gore* (1910), 143 Wisc. 531, 128 N.W. 68; *Petersen v. Hodges* (1951), 121 Utah 72, 239 P.2d 180.

There is no indication in the record that Holtz contemplated an immediate or specific time of entry at the time he instructed Amoss to leave or have the lock to his door "plugged." The fact that Amoss remained in possession for another half hour supports this conclusion and belies any argument that these words were of a sufficiently grave and permanent nature to constitute a constructive eviction.

■■ Pursuant to the written notice, Amoss' right to possession of his room terminated at 2 p.m. on May 5, 1977, and he was under a duty to surrender the premises to defendants. (*Klesath v. Barber* (1972), 4 Ill. App. 3d 86, 280 N.E.2d 283; 24 Ill. L. & Prac. *Landlord & Tenant* §301, at 356 (1980).) Defendants at no time prior to his departure used force, actual or implied, to remove Amoss nor did they undertake any overt act in furtherance of their statement. The pleadings indicate that neither Holtz nor any other YMCA personnel entered Amoss' room until after he vacated the premises. In light of the fact that Amoss did not have a continued right to possession and was no longer in possession of his room at the time of the alleged entry, defendants' entry cannot be said to be against his will. Accordingly, we find Holtz' statement to Amoss—that if he did not leave the premises that Holtz would place an object ("plug") in the lock of his door so that he could not gain access to his room—without some overt act in furtherance of this statement to be insufficient to constitute implied force. Consequently, the trial court erred in finding that defendants' actions constituted a forcible entry.

## II.

In view of our determination of the preceding issue, it is unnecessary to consider whether plaintiffs claimed actual damages in their amended complaint for violation of the forcible entry and detainer statute.

### III.

Plaintiffs also contend that the court erred in finding that their occupancy in the Evanston YMCA was "transient occupancy in a hotel" within the meaning of section 23½—1.202(d) of the Evanston Landlord and Tenant Ordinance (Code of the City of Evanston 1957, ch. 23½, §23½—1.202(d), as amended) and as such that defendant YMCA was exempt from said ordinance. Plaintiffs rely on the provisions which provide in pertinent part:

> "Section 23½—4.207—Tenant's Remedies for Landlord's Unlawful Ouster, Exclusion, or Diminution of Service. If the landlord unlawfully removes or excludes the tenant from the premises * * * the tenant may recover possession or terminate the rental agreement and, in either case, recover an amount equal to not more than two months' rent or twice the damages sustained by him, whichever is greater, and reasonable attorney's fees * * *." (Code of the City of Evanston 1957, ch. 23½, §23½—4.207, as amended)

Plaintiffs maintain that defendants' forcible entry constituted the unlawful act necessary to warrant the damages provided by the ordinance. In view of our decision that no forcible entry has been established, it is unnecessary to consider the applicability of the ordinance.

### IV.

For the reasons stated, the judgment in favor of plaintiffs and against YMCA for violation of the statute is reversed, and the judgment in favor of defendants as to damages under the ordinance is affirmed.

Reversed in part; affirmed in part.

SULLIVAN, P. J., and LORENZ, J., concur.