2021 IL App (2d) 200239-U
No. 2-20-0239
Order filed May 20, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| HANG CUI & REIYING FEI, | ) | Appeal from the Circuit Court |
| | ) | of DuPage County. |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 14-MR-1418 |
| | ) | |
| LYNN KUBYCHECK & JON | ) | |
| KUBYCHECK,[1] | ) | Honorable |
| | ) | Dorothy French Mallen, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Hudson and Brennan concurred with the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not err in dismissing plaintiffs' second amended complaint for failure to state claims of malicious prosecution, trespass, and intentional infliction of emotional distress.

_____

[1] On the court's own motion, we have changed the caption to reflect that the City of Elmhurst is no longer a defendant; the Kubychecks are the only defendants remaining in this case.

¶ 2 Hang Cui and his wife, Ruiying Fei, appeal the dismissal of their second amended complaint against Lynn Kubycheck and her son, Jon. Cui was arrested in front of his wife and together, they sued the Kubychecks for malicious prosecution, trespass, and other related claims. Like the trial court, we determine that plaintiffs have pled themselves out of court.

¶ 3                                    I. BACKGROUND

¶ 4 We take the facts in the light most favorable to plaintiffs, provided they are well-pled (*Estate of Alford v. Shelton*, 2017 IL 121199, ¶ 35), although here the operative facts are not in dispute. In addition, we note that several police reports and items of correspondence are attached as exhibits and incorporated into plaintiffs' second amended complaint, which shed some light on the parties' underlying dispute.

¶ 5 Initially, plaintiffs owned a home in Elmhurst. At some point, they fell behind on the mortgage and the bank foreclosed on the property, but the bank allowed plaintiffs to continue to reside in the home as holdover tenants on a month-to-month basis. On February 17, 2012, however, the bank sold the property to Lynn Kubycheck.

¶ 6 That same day, Lynn recorded the deed. She also notified plaintiffs by letter that the property had been sold, and that the bank's rights had been assigned to Lynn as the owner and landlord. She also included a second letter, which notified plaintiffs that their lease would be terminated in 30 days. See 735 ILCS 5/9-207(b) (West 2012). Plaintiffs, however, failed to vacate the premises within that time and on March 22, 2012, Lynn filed an eviction case pursuant to the Illinois Forcible Entry and Detainer Act (the Act) (735 ILCS 5/9-101 *et seq.* (West 2012)) seeking possession of the property and damages in the amount of $1853—$1600 for rent and $253 in court costs. On June 1, 2012, the parties entered into an agreed eviction order, wherein plaintiffs would pay Lynn $1853 and the writ of restitution (the order formally granting Lynn possession) would

be stayed until June 26, 2012. The settlement permitted the judgment to be vacated if plaintiffs paid Lynn or on Lynn's motion.

¶ 7        On June 26, 2012, Cui gave the keys and a check for $1853 to his attorney. Cui asked his attorney to "inform" Lynn to wait to enter the house until June 28, 2012, because plaintiffs' "new residence had a floor with poly coating that was not dry yet." Cui was apparently worried that Lynn would cash the check "but then refuse[ ] to sign the documents to vacate the court order[,]" so he "decided to give [Lynn] a check with no funds yet * * *." According to Cui, this is "a common practice in the performance of informal financial deals, which he had previously learned of."

¶ 8        On June 27, 2012, Cui's attorney notified Lynn's attorney that he had the keys and the check. That same day, Lynn and Jon entered the house and discovered that plaintiffs were still there. Worse, Lynn and Jon discovered that "Cui had moved the refrigerator, washer, and dryer from the house." Lynn called the Elmhurst Police Department, and once the police arrived, Cui "informed" them of his position that the missing appliances were his "personal belongings" because he bought them. The police removed plaintiffs from the premises.

¶ 9        Lynn attempted to deposit the check on July 3 and July 20, 2012, and it was refused for insufficient funds both times. The record is unclear on what occurred in the interim; however, on December 14, 2012 Cui received a certified letter from Lynn demanding payment. Six days later, when Lynn *again* attempted to cash the check, the account still was not funded. Ultimately, Cui's check never cleared and in January 2013 Lynn reported him to the police.

¶ 10        As part of his investigation, Elmhurst Police Officer Steven Mandat obtained a subpoena for Cui's bank records, and the bank reported that the account did not have enough money to cover the check when it was issued. The bank provided a copy of the notice that it issued to Cui informing

him that his account was overdrawn and that the check had been returned for insufficient funds. On March 12, 2013, Mandat took Lynn before a judge who issued an arrest warrant for Cui for the offense of attempt deceptive practices (720 ILCS 5/8-4(a), 17-1(B)(1) (West 2012)). According to the complaint, Cui was then arrested in front of his wife, which distressed her. On May 2, 2014, for reasons that are not clear from the record, the State nol-prossed the misdemeanor case.

¶ 11    Plaintiffs then sued the Kubychecks, Mandat, and another arresting officer. The City of Elmhurst indemnified the officers, and the case was removed to federal court. 28 U.S.C. § 1441(a) (2012). There, plaintiffs alleged federal civil rights violations through malicious prosecution (42 U.S.C. § 1983) and conspiracy (42 U.S.C. § 1985), as well as violations of state law. The City of Elmhurst settled a discrimination claim with plaintiffs against the other arresting officer, and the district court ultimately granted the City's motion to dismiss the remaining federal-law claims in plaintiffs' fourth amended federal complaint. *Cui v. Elmhurst Police Department*, 2017 WL 680318 (N.D. Ill., Feb. 21, 2017); 2017 WL 1344523 (N.D. Ill., Apr. 12, 2017). Relevant here, despite multiple iterations of their federal complaint, the district court repeatedly concluded that there was sufficient probable cause for the police to arrest Cui for passing Lynn the bad check, which short-circuited any malicious-prosecution claim. *Id.* The district court also relinquished supplemental jurisdiction over the state-law claims involving the Kubychecks. Plaintiffs appealed and the Seventh Circuit affirmed in a short summary order. *Cui v. City of Elmhurst, Illinois*, 733 Fed. Appx. 840 (7th Cir. 2018).

¶ 12    Now back in state court, plaintiffs filed their second amended complaint against the Kubychecks only, and raised four claims: (count I) malicious prosecution, for reporting the bad check to the Elmhurst police; (count II) trespass, for entering the property on June 27, 2012, and causing the police to do the same; (count III) negligent infliction of emotional distress, and (count

IV) intentional infliction of emotional distress, for reporting the bad check, which caused Cui to be arrested in front of Fei. The trial court granted the Kubychecks' motion to dismiss (735 ILCS 5/2-615 (West 2016)) and plaintiffs timely appealed.

¶ 13                                                    II. ANALYSIS

¶ 14     A section 2-615 motion to dismiss tests the legal sufficiency of a complaint and the "question to be answered is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, state sufficient facts to establish a cause of action upon which relief may be granted." *Hadley v. Subscriber Doe*, 2015 IL 118000, ¶ 29. Put differently, a cause of action may be dismissed under section 2-615 only if no set of facts could be proved that would entitle the plaintiff to recover. *Doe v. Coe*, 2019 IL 123521, ¶ 31. We review the dismissal *de novo* (*id*. ¶ 20), and, having reviewed the complaint, we agree with the trial court that plaintiffs failed to state a claim in each of the four counts of the complaint.

¶ 15     We turn first to count I. To state a cause of action for malicious prosecution, the plaintiff must prove five elements: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. [Citations.]" (Internal quotation marks omitted.) *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 26. The absence of any element bars a malicious-prosecution claim. *Id.* (citing *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996)).

¶ 16     The first element requires that plaintiffs can show the defendant commenced or continued the original criminal proceeding. *Beaman*, 2019 IL 122654, ¶ 26; see also *Szczesniak v. CJC Auto Parts, Inc.*, 2014 IL App (2d) 130636, ¶ 11. Here, plaintiffs assert that Lynn "commenced the criminal arrest and prosecution of [Cui] by knowingly making false statements to the police"—but

that simply is not the case from plaintiffs' own complaint.

¶ 17     As we noted in *Szczesniak*, private citizens generally do not initiate criminal proceedings; that is a task entrusted to peace officers and prosecutors who formally charge the accused, typically after a criminal investigation with an eye towards prosecution.  2014 IL App (2d) 130636, ¶¶ 11, 17. Given this " 'presumption of prosecutorial independence' " (*Beaman*, 2019 IL 122654, ¶ 44 (quoting 52 Am. Jur. 2d *Malicious Prosecution* § 88 (2018)), even if a private citizen "knowingly provides false information, he or she is not liable for 'commencing' a criminal proceeding if the prosecution is based upon separate or independently developed information. [Citation.]" *Szczesniak*, 2014 IL App (2d) 130636, ¶ 11.

¶ 18     Parenthetically, we note that the "false" information Lynn allegedly supplied to the police was that the check was used to pay for rent rather than to pay the settlement in the eviction case. In other words, plaintiffs assert that Lynn falsely told the police Cui had given her a "bad *rent* check" as opposed to a bad *settlement* check. In service of this puzzling argument, plaintiffs press the byzantine point that were "never" Lynn's tenants both because she notified them that she was terminating their lease the day she took ownership of the property and because plaintiffs never "consented" to being her tenant. See generally BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "attornment" as "[a] tenant's agreement to hold the land as the tenant of a new landlord"); see also *Arendt v. Lake View Courts Associates*, 51 Ill. App. 3d 564, 566 (1977) ("[a]ttornment * * * is an act by a tenant in acknowledging his obligation to a new landlord"). Plaintiffs also point out that the memo line of Cui's check indicates that it was for the settlement of the eviction case and does not characterize the transaction as a rental payment.

¶ 19     The discrepancy between a "bad rent check" and a "bad settlement check" is a clear example of a distinction without a difference in this case. With respect to the residential property,

it is axiomatic that, by not immediately surrendering possession of the premises on February 17, 2012, and by continuing to occupy the residence, plaintiffs manifested their assent to Lynn's right to receive rent as their landlord—and, likewise, to their own tenancy. The principle "[t]hat a party who continues to occupy premises after being notified by the owner that if he does so he will be expected to pay rent, thereby becomes liable therefor, does not seem to be controverted, and, indeed, could not be * * *." *Illinois Central Railway Co. v. Thompson*, 116 Ill. 159, 162 (1886); see also *Bleck v. Cosgrove*, 32 Ill. App. 2d 267, 275 (1961) (noting that "[t]he authority to collect rent is not confined to pray[er]ful begging on bended knee at the door of the tenant"). Moreover, we note that on June 1, 2012, plaintiffs agreed to pay Lynn $1600 for rent (and $253 in court costs) to settle the eviction case. Referring to the payment differently does not change its character; plaintiffs admitted that they owed Lynn that money *for rent* and are judicially estopped from attempting to deny as much. See, *e.g.*, *Bleck*, 32 Ill. App. 2d at 274 (applying estoppel in an entry-and-detainer proceeding brought by successor where tenant acknowledged initial owner's right to receive payment).

¶ 20    In any case, for the purpose of a malicious-prosecution claim, it is irrelevant what Lynn told the police about the nature of the check that Cui had passed to her. As we held in *Szczesniak*—a similar bad-check-turned-malicious-prosecution case—not only was Lynn's statement about Cui's failure to make payments abundantly true, her statement was also "superseded and rendered immaterial" by the subsequent police investigation (2014 IL App (2d) 130636, ¶ 13), which adduced sufficient evidence warranting Cui's arrest and prosecution. As such, Lynn was not a proper defendant for a malicious-prosecution claim, and plaintiffs' claim against her necessarily fails.

¶ 21    We need not say more to dispose of this count (see *id*. ¶ 15), however, we note that plaintiffs

fall short on the second element as well by failing to show that Cui's criminal prosecution was terminated in his favor. Plaintiffs ask that we take judicial notice of the docket entries in Cui's criminal case (13-CM-927). We grant the request, albeit with an alteration. Here, plaintiffs attempted to supply a summary of the docket sheets to us in their appellate brief by stating that a court clerk read the docket of Cui's misdemeanor case to plaintiffs' counsel "during a telephone call on either December 26 or 27, 2019." We generally will not accept a party's statement of a fact in their appellate brief without support in the record (*e.g.*, *Witek v. Leisure Technology Midwest, Inc.*, 39 Ill. App. 3d 637, 641 (1976)); however, we can take judicial notice of the circuit clerk's online docket report (*e.g.*, *Wells Fargo Bank, N.A. v. Simpson*, 2015 IL App (1st) 142925, ¶ 24, n.4), which offers up the same information.

¶ 22     Here, the docket sheets reflect that Cui's misdemeanor case was continued twice for jury trial and was then nol-prossed on the State's motion on May 2, 2014. In their complaint, plaintiffs claimed that "prosecutors, upon information and belief, * * * knew they would not be able to prove the elements of the crime" and thus assert that the prosecution was terminated in Cui's favor, but that assertion is unwarranted.

¶ 23     Our supreme court directly dealt with this issue in *Swick*, 169 Ill. 2d 504, wherein the court noted that a *nolle prosequi* is not a final disposition and thus held that the State's decision to nol-pros a criminal charge does not necessarily constitute a favorable termination allowing that plaintiff to, in turn, establish a claim for malicious prosecution. *Id.* at 513. The question turns upon the circumstances under which the proceedings were withdrawn, which may of course be "for reasons not indicative of the innocence of the accused." *Id*. Thus, only when a plaintiff establishes that the *nolle prosequi* of his criminal charges was entered for reasons indicative of his innocence does he meet the element of favorable termination necessary for a malicious prosecution claim. *Id*.

In other words, the circumstances surrounding abandonment of criminal proceedings must "compel an inference that there existed lack of reasonable grounds to pursue the criminal prosecution." *Id*. at 514. If, on the other hand, the underlying criminal proceedings were terminated in a manner not indicative of the plaintiff's innocence—such as an agreement or compromise with the accused, misconduct on the part of the accused to prevent trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impracticability of bringing the accused to trial—then, he cannot assert a malicious-prosecution claim. *Id*. at 513. Whatever the reason, again, it remains the plaintiff's burden to show that the termination was in his favor. *Id*.

¶ 24     Here, plaintiffs' conclusory statement that the prosecution was terminated in Cui's favor was clearly insufficient under *Swick*. Moreover, it is plainly belied by the history of this litigation. As noted above, this case has been through both state and federal court, and Cui has consistently made the mystifying concession that he *intentionally* gave Lynn a bad check in *each* version of his complaint, as though it was some sort of conventional business practice. Accordingly, Cui cannot be on strong ground asserting that he was innocent, or that he was arrested without probable cause for, as the Seventh Circuit noted, "As it is undisputed that the check was written knowing that it was not backed by sufficient funds, the issuing judge was entitled to infer an intent to defraud." *Cui v. City of Elmhurst, Illinois*, 733 Fed. Appx. 840, 841 (7th Cir. 2018) (citing 720 ILCS 5/17-1(B)(1)). Neither federal nor state law prohibits officers from executing a valid arrest warrant, based on probable cause, against the author of a bad check. See *id.* Suffice it to say, we agree with the trial court that plaintiffs failed to state a claim for malicious prosecution.

¶ 25     For reasons similar to those already discussed, we agree that plaintiffs failed to state a claim for trespass as well. To sustain an action for trespass to real property, plaintiffs must allege a wrongful interference with their actual possessory rights in the property. *Loftus v. Mingo*, 158 Ill.

App. 3d 733, 744 (1987). Plaintiffs claim that Lynn and Jon "unlawfully" entered the property on June 27, 2012, and "in a form of illegal 'landlord' self-help" caused the Elmhurst police to "invade" the premises and "evict" plaintiffs. On appeal, plaintiffs assert that the Act is the exclusive mechanism for determining the lawful possession of contested property. Plaintiffs further note that trespass may be inadvertent rather than intentional. See, *e.g.*, *Dial v. City of O'Fallon*, 81 Ill. 2d 548, 555 (1980) (a person is liable for trespass as a result of his intentional or negligent intrusion onto the plaintiff's property).

¶ 26     Here, too, plaintiffs have overlooked the significance of their prior participation in the entry-and-detainer proceeding under the Act, in which they *agreed* that they *could not* lawfully possess the property after June 25, 2012. As the trial court noted, it offends all notions of fair play for plaintiffs to obtain a favorable stay of the eviction judgment terminating their lawful possession in one proceeding and then later attempt to establish that possession was wrongfully withheld *after* the stay lapsed. *Bleck*, 32 Ill. App. 2d at 274. We note, too, that plaintiffs have never challenged the eviction order either directly or collaterally, but even if plaintiffs believed that order was somehow erroneous, it would in no way lesser their obligation to obey it. See *People v. Nance*, 189 Ill. 2d 142, 145 (2000). Like the trial court, we determine that the eviction order was *res judicata* on the issue of lawful possession, and bars plaintiffs' trespass claim. See *Gurga v. Roth*, 2011 IL App (2d) 100444, ¶ 11 (unlike an action to quiet title, an eviction proceeding between the same parties is *res judicata* on the question of possession); see also Ill. S. Ct. R. 273 (eff. Jan. 1, 1967) ("an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits"). Therefore, as pled, we determine that plaintiffs could not maintain an action for trespass as they had no lawful right of possession after the stay expired. See *Village of Bartonville v. Lopez*,

2017 IL 120643, ¶ 49 ("*Res judicata* embraces all grounds of recovery and defenses involved and which might have been raised in the first action."); *DuPage Forklift Service*, 195 Ill. 2d at 77 (collateral estoppel prevents the relitigation of issues that have already been resolved in earlier actions).

¶ 27 We note that this was categorically not a case of landlord "self-help" to avoid legal proceedings under the Act. See *People v. Eatman*, 405 Ill. 491, 496 (1950); *Reader v. Purdy*, 41 Ill. 279, 284 (1866). For one thing, plaintiffs' allegation that Lynn and the Elmhurst Police Department "evict[ed]" plaintiffs "by force" was conclusory, and may be disregarded, as no specific facts were pled. See, *e.g.*, *Towne v. Town of Libertyville*, 190 Ill. App. 3d 563, 566-67 (1989) (holding that if, after deleting the conclusions that are pled, there are not sufficient allegations of fact to state a cause of action, dismissal is proper). Furthermore, Lynn did not take matters into her own hands or engage in any frontier justice to remove plaintiffs. Lynn instituted legal proceedings under the Act, and obtained an agreed order granting her the right of lawful possession beginning June 26, 2012. *Cf. Soldal v. Cook County*, 506 U.S. 56, 58-59 (1992) (where deputies helped landlord unlawfully evict plaintiff by removing his mobile home from the lot before landlord obtained an entry-and-detainer judgment); see also *Perry v. Evanston Young Men's Christian Association*, 92 Ill. App. 3d 820, 825-27 (1981) ("[i]t is the duty of a tenant to surrender possession at the expiration of his lease"). We are aware of no authority (and plaintiffs cite none) that would require Lynn *not* to report a trespasser on her property, whether to the police or to the sheriff, *after* she had obtained an order granting her possession.

¶ 28 With respect to count III, plaintiffs concede that they cannot maintain a cause of action for negligent infliction of emotional distress because plaintiffs did not allege that they suffered any physical injury or were placed in extreme danger as a result of Cui's arrest. See *Schweihs v. Chase*

*Home Finance*, *LLC*, 2016 IL 120041, ¶ 38 ("precedent makes clear that a direct victim's claims for negligent infliction of emotional distress must include an allegation of contemporaneous physical injury or impact"). We accept the concession and affirm the dismissal of this count.

¶ 29    Finally, we conclude the same with respect to count IV. In order to establish a claim for intentional infliction of emotional distress (IIED), a plaintiff must show: (1) the conduct involved was truly extreme and outrageous; (2) the actor either intended that his conduct inflict severe emotional distress or knew that there was at least a high probability that his conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988). " 'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity.' " *Id*. (quoting Restatement (Second) of Torts § 46, comment j, at 77-78 (1965)). In determining whether conduct is extreme and outrageous, courts use an objective standard. *Duffy v. Orlan Brook Condominium Owner's Ass'n*, 2012 IL App (1st) 113577, ¶ 36.

¶ 30    To some extent, plaintiffs' one-page argument overlaps with their unsuccessful malicious-prosecution claim. Plaintiffs assert that Lynn's conduct was "extreme and outrageous" because she knowingly supplied the police with "false claims * * *." Again, we disagree. Plaintiffs have yet to point out any statement by Lynn that was false, let alone extreme or outrageous. Plaintiffs' scant one-page argument on appeal cites only *Bianchi v. McQueen*, 2016 IL (2d) 150646 for support, but that case is readily distinguishable. In *Bianchi*, we held that the first element of an IIED claim was satisfied because the plaintiffs alleged that the defendants—investigators who were part of a special prosecution team—fabricated and manufactured evidence, as well as concealed exculpatory evidence for the purpose of falsely and maliciously detaining, arresting, and

charging the plaintiffs. *Id*. ¶ 84. There is nothing like there here. Objectively, we find nothing extreme or outrageous in the acts of an individual, who receives a bad check, and who unsuccessfully attempts to deposit it over a six-month timespan, reporting the same to the police. The person would appear to have been bilked; they are a victim, and there is nothing extreme or outrageous about reporting that crime to the authorities. Because plaintiffs failed to establish the first element of their IIED claim, that count was also properly dismissed.

¶ 31                              III. CONCLUSION

¶ 32     We agree with the trial court that plaintiffs failed to state a claim and affirm the dismissal of their complaint. Plaintiffs ask that we, instead, direct the trial court to grant them leave to amend to add the claim that "[Cui] made no deals with the State to obtain the termination of the criminal case in his favor * * *." That amendment, however, would add nothing of substance to this case. It would not, for example, preclude the possibility that Cui's criminal case was terminated for yet another reason—*e.g.*, speedy-trial violation, or defendant having caused a witness's unavailability—which would have nothing to do with his innocence. See *Swick*, 169 Ill. 2d at 513. The proposed amendment simply does not militate that the criminal proceedings were terminated in Cui's favor. What is more, the amendment would not change the fact that Officer Mandat initiated the criminal proceeding against Cui, not Lynn, so plaintiffs' malicious-prosecution claim would still fail to launch. Amendments, of course, should be permitted with an eye to effectuate substantial justice between the parties (735 ILCS 5/2-603(c) (West 2018)) and we may relax the waiver rule in order to do so (Ill. S. Ct. R. 366(a)(1), (a)(5) (eff. Feb. 1, 1994)). Here, however, after three state complaints, and four federal complaints, all of which fatally maintain that Cui intended to pass Lynn a bad check, we can confidently say that enough is enough. We decline to

grant plaintiffs leave to amend and, for the reasons stated, we affirm the judgment of the Circuit

Court of DuPage County dismissing plaintiffs second amended complaint.

¶ 33    Affirmed.